## SAVITT v. UNITED STATES.

## ROTHFUSS v. UNITED STATES.

### Nos. 4743, 4753.

Circuit Court of Appeals, Third Circuit.
June 13, 1932.

Rehearing Denied July 11, 1932.

James F. X. O'Brien, of Newark, N. J., for appellant Rothfuss.

Elizabeth Blume, of Newark, N. J., for appellant Savitt.

Walter B. Petry, Asst. U. S. Atty., and Phillip Forman, U. S. Atty., both of Trenton, N. J., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

The indictment charged Rothfuss, an assistant cashier of the New Jersey National Bank and Trust Company of Newark, New Jersey, with misapplication of the bank's funds and charged Savitt, a depositor, with aiding and abetting him. Both were convicted and sentenced, and both have appealed.

Savitt first assigns error to the trial court in refusing his motion for a continuance based on the absence of a material witness. Savitt recognizes that the action of a trial court upon an application for continuance is purely a matter of discretion, not subject to review unless it be clearly shown that such discretion has been abused, Isaacs v. United States, 159 U. S. 487, 16 S. Ct. 51, 40 L. Ed. 229.; Hardy v. United States, 186 U. S. 224, 22 S. Ct. 889, 46 L. Ed. 1137; Trombetta v. United States (C. C. A.) 54 F.(2d) 924, but urges that in this case the action of the trial judge was more than an abuse of discretion in that it struck at the root of the constitutional right of religious belief and worship.

The witness was Savitt's wife, whose absence was attributed to her exercise of the religious rite (in the Jewish faith) of shivah or "sitting low" (remaining in the home) for seven days after the burial of her deceased brother. This religious custom or function to which a constitutional right is asserted was that of the alleged witness, not a right of the defendant. Therefore no religious right of the defendant was abridged

by the court's direction that the trial proceed without the witness. The only conceivable right which might thereby have been denied the defendant was that of a continuance because of the absence of a material witness. So the question here is not a religious one but, as usual, is a legal one, namely, whether the witness who was absent for religious reasons was after all material.

■ There was nothing in Savitt's motion, and nothing he stated in support of it, which indicated that the absent witness was necessary to his case, nothing to show the character of her proposed testimony, and therefore nothing to apprise the court that her testimony would be material to his defense. On this lack of information as to whether or not Savitt's wife was a material witness (Warren v. United States [C. C. A.] 250 F. 89), the learned trial judge committed no error in denying the motion for a continuance.

■ Savitt and Rothfuss complain that they were deprived of other constitutional rights by the peculiar way in which the court forced them to try their case. After the United States Attorney had opened to the jury and before any witnesses had been called, the court, in order that the jury might be early informed of the issues of the case, directed the defendants' counsel to state their defense to the jury. This, they say, was in contravention of their constitutional right (Fifth Amendment) not to "be compelled * * * to be a witness against himself" and of their similar rights (Sixth Amendment) "to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him. * * *"

Opening to the jury by both sides before any testimony has been introduced, though a common practice in some state courts, is unusual in federal courts; yet we cannot say it is unlawful for the constitutional reasons named, the only reasons advanced. In stating their defense to the jury before the government had proved its case, they suffered from no lack of information of the nature of the accusation against them. The indictment and the United States Attorney in his opening had fully informed them. Their right to be confronted with witnesses was accorded them long before the case was submitted to the jury for decision, and they were never remotely compelled to be witnesses against themselves. There is nothing substantial in this assignment of error.

■ Passing the main assignments of error for the moment, the final one is that the court erred in imposing upon each defendant sentence of imprisonment and "a single fine of $2000." If the matter were validly before us, the appellants have not cited authorities nor have they given reasons that would persuade us to find the sentences unlawful. The assignment of error raising this question, however, is invalid in that it is not supported by an exception.

We now come to the main questions here on appeal.

There are five counts in the indictment. Each count charges that Rothfuss, an assistant cashier of the bank, "knowingly, fraudulently and unlawfully, and with intent to defraud the said bank, did misapply" certain of its moneys, and that Savitt, a depositor, aided and abetted him, acting in a way which, except as to the makers and amounts and dates of the different checks severally involved, is the same in each count.

■ The story of the counts and of the supporting evidence is (taking the first count as an example) that Savitt obtained a check for $380 from one Curcio and deposited it to the credit of his account in the bank. The depository bank then sent it to the distant payer bank for collection, and in due course it was returned uncollected for want of funds. That is not an uncommon experience. In this transaction the check when deposited was credited to Savitt's account, and on its return it was debited, thus striking a balance. On receiving the check stamped uncollected, Savitt immediately redeposited it for collection. Again it was credited to his account and sent forward. Again it was returned uncollected and again debited to his account. There was nothing wrongful or very unusual about this transaction, for the payee of an uncollected check sometimes redeposits it with the hope of catching funds in the maker's account at the maker's bank when again presented. This was done a third time. Even, then, if nothing else had happened, this would show nothing more than annoying persistence on the part of the payee. But this check (or a substituted check by the same maker to the same payee for the same amount) was deposited and redeposited and sent forward for collection seventeen times. The check described in the second count was deposited and re-deposited fourteen times, and the checks in the other counts a lesser number of times. The precise number of re-deposits was in dispute, but the difference involved in this phase of the controversy was negligible and had little bearing on the issues. These transactions

ran for a period of about two months. Still, if nothing else had occurred, Savitt could not by this practice be regarded as anything more than a nuisance, and Rothfuss, through whose hands the matters passed, could be looked upon as nothing more than an inefficient bank officer for allowing this practice to continue endlessly. But other things were done.

Those done by Savitt were to draw from time to time on his account against balances enlarged (in figures) by depositing outstanding uncollected checks until in this way he had greatly overdrawn his real balance and had gradually withdrawn the bank's funds into his own possession in the amount of something like $10,000.

The thing which Rothfuss did was to allow Savitt to pursue his practice of depositing uncollected checks and drawing against them with full knowledge of the worthlessness of the checks and consequent overdrafts, though perhaps not with knowledge of their full amount.

There was little dispute as to what was done by Savitt in depositing and re-depositing worthless checks and drawing against his account enlarged by their credits or by Rothfuss in permitting Savitt to do so. The defense of both men is in effect that no matter what happened there was no intent on the part of either to defraud the bank and that all their actions, both before and after the transactions came to light, were as consistent with innocence as with guilt. So the three original assignments of error filed by Rothfuss and the sixty-eight additional assignments he afterwards filed and the ten original assignments of error filed by Savitt and the eighty additional assignments filed afterwards resolve themselves into two real questions: First, that of a fair trial; and second, whether on the trial the evidence of intent was sufficient in substance to submit the case to the jury, or, stated differently, whether it was so insubstantial as to require the court to grant the defendants' motion for a directed verdict of acquittal.

With the question of unfair trial in mind we have carefully read this record. The trial was without doubt a heated one and some of the things said and done might well have been omitted. If, however, the court displayed irritability in its rulings or overstressed the case in some of its aspects in order to bring it back into proper balance, it was no doubt occasioned in part by the habit of counsel in making innumerable objections to ques-

tions no matter how material or immaterial or how important or unimportant. The trend of the trial is rather clearly indicated by the one hundred and sixty-one assignments of error filed on this appeal, the most of which counsel must have known when filing them are without substance.

There was of course in this case as in most cases of this kind no direct evidence of intent to defraud. Such intent, an element of the crime and expressly alleged in the indictment, must be proved; but intent can be proved by facts and acts from which it may be inferred. If the inferences from proven facts and acts are as consistent with an innocent intent as with a guilty intent, the point is not proved. But on the other hand if they exclude every hypothesis except that of guilt the point is proved. In guiding the jury in what is a purely mental operation, the law has laid down at least one rule which the learned trial judge properly charged to the effect that "every man is presumed to intend the natural and necessary consequences of his acts."

From Savitt's action in taking the bank's money without its knowledge and in a highly irregular way, he might lawfully be presumed to have intended the consequences of his acts, that of defrauding the bank. The jury were quite justified in finding, as their verdict denotes, that his act and its consequences were not equally compatible with innocence and guilt, for he of all people knew he was getting the bank's money and getting it not with its permission but unlawfully.

So, also, Rothfuss must be presumed to have intended the natural and in this case the inevitable consequences of his acts, that of loss to the bank, when, knowing all along that Savitt's account was overdrawn, as well as knowing the method by which it was being overdrawn, he instructed one of the clerks to pay Savitt's checks against his uncollected account and at different times instructed two clerks not to report the overdrafts, thus keeping knowledge of what was going on from the higher officials of the bank. The trial judge could not say as matter of law that Rothfuss' conduct was as compatible with innocence as with guilt. That was a matter for the jury which, judging from their verdict, evidently found it difficult to believe that the actions of Rothfuss were innocent, notwithstanding they were at the same time permitted to draw an inference of innocent intent from the fact that there was no evidence that he received any part of the money Savitt drew out.

And, finally, the appellants say, rather naively, that the bank was not defrauded as alleged in the indictment because its temporary loss was made good by a bonding company. They take this position from the circumstance that, after discovery, the mother-in-law of Savitt gave a judgment covering all of her property (greater in value than the amount of the loss) to the bonding company that had already paid the bank. Restitution or attempted restitution does not nullify or excuse a previous crime. Such action may be prompted by various reasons, but it is not evidence of an antecedent innocent intent with which the acts complained of as constituting the crime were committed.

The motion for a directed verdict of acquittal was properly denied.

We find it unnecessary to reproduce in this opinion our labored study of the mass of assignments of error, many of which overlap. It will be enough to say that we find they largely converge upon the points we have discussed and contain in themselves, separately or jointly, no prejudicial error.

The judgments of sentence are affirmed.