## UNITED STATES v. SAMUEL DUNKEL & CO., Inc., et al.

### Nos. 169 and 170, Dockets 21218, 21219.

United States Court of Appeals
Second Circuit.

March 11, 1949.

Jay Leo Rothschild, of New York City (Maurice L. Albert, of New York City, on the brief), for appellants Samuel Dunkel & Co., Inc., Sondra Egg Products Corp., Charles Cohen, and Julius Cohen.

Daniel H. Prior, of Albany, N. Y. (George Brussel, Jr., of New York City, on the brief), for appellant Sidney S. Atlas.

L. E. Broome and James W. Knapp, Attys., U. S. Dept. of Justice, both of Washington, D. C. (Irving J. Higbee, U. S. Atty., of Syracuse, N. Y., on the brief), for appellee.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

CLARK, Circuit Judge.

These long delayed appeals arise out of convictions in September, 1943, on two conspiracy indictments, based on fraudulent wartime sales of dried eggs to a government instrumentality, the Federal Surplus Commodities Corporation. The two corporate defendants and two of the individual defendants were convicted on both indictments—one under 18 U.S.C.A. § 83, for conspiring to defraud the Government by obtaining or aiding to obtain the payment of false claims, and the other under the broader provisions of 18 U.S.C.A. § 88, for conspiring to commit an offense against the United States, to wit, the delivery of rejected dried egg powder, falsely represented to have been tested and accepted in accordance with the contract. The other two individual defendants were convicted only under the § 88 indictment.

After the jury had deliberated for more than twelve hours over a 24-hour period, during which it had several times requested and received further instructions and explanations of the law, it returned to the courtroom; and upon inquiry of the court clerk as to whether or not it had agreed upon a verdict, the following colloquy occurred:

"The Foreman of the Jury: We wish to inform you that we have been unable to reach a satisfactory agreement, after many hours of due deliberations it appears that we will be unable to reach unanimous agreement.

"The Court: Ladies and gentlemen: I am not going to accept the report of the jury now. This has been a long case, with a considerable amount of evidence, with a rather simple and concise question of fact. We all have duties to perform. We must make every honest effort that we can to perform them. May I ask you, Mr. Whitney, I believe it is, without disclosing the way in which the jury stands, can you tell me, are they nearly equally divided as to a question of fact, or is there a majority, a pronounced majority in agreement, with a pronounced minority in disagreement? I think you know what I mean.

"The Foreman of the Jury: There is a majority, very much.

"The Court: I do not believe there is any use repeating my charge to you, that is as clear as I could make it after some thought, and perhaps a repetition might be

only confusing. I am going to say something to you:"

Thereupon the court proceeded to state—in nearly literal quotation except for its change of form to direct admonition—the oft-repeated material found in the opinion in Allen v. United States, 164 U.S. 492, at page 501, 17 S.Ct. 154, 41 L.Ed. 528, upon the duty of jurors to agree. Included were the statements that "a dissenting juror or jurors should consider whether his attitude was a reasonable one which made no impression upon the minds of the rest of the jury equally as honest, equally as intelligent as he. * * * It is the duty of each juror to listen with deference to arguments, and with distrust of his own judgment if he finds a large majority of the jury taking a different view of the case from what he does himself."

Upon the retiring of the jury, counsel for the defendants took exception to the instructions just given and said that "if any verdict is reached now it will be a verdict produced by coercion." The court then stated its belief that no exception would be valid unless made in the presence of the jury, but its offer to recall the jury for the purpose was not accepted. The jury continued its deliberations for nearly eight hours more, returning three times to ask questions of the court as to the law. Upon the first occasion the court, after answering the question submitted, stated that a juror had reported that the jury was unable to agree and then went on to urge further consideration, saying, "I do not think that the matters involved are complicated. If these defendants, men and corporations, are innocent, they should be so found. If they are guilty, they should be so found. * * * Approach this task as a task that should be accomplished, a duty to be performed, carefully, quietly, conscientiously; go over the evidence as you remember it. Listen to the arguments of your co-juror. Use your own good common sense in the performance of your duty." Several hours thereafter and after it had returned twice more for instructions, the jury brought in the verdicts upon which the judgments ap-

pealed from were entered. The incident narrated furnishes the grounds for the most serious challenge to the convictions presented by the various assignments of error.

"It is a familiar practice to recall a jury, after they have been in deliberation for any length of time, for the purpose of ascertaining what difficulties they have in the consideration of the case, and of making proper efforts to assist them in the solution of those difficulties." Allis v. United States, 155 U.S. 117, 123, 15 S.Ct. 36, 38, 39 L.Ed. 91. But notions have changed since the days when the jurors were kept without "meat, drink, fire, or candle" until they reached agreement, and, if they were not agreed before the judge was due to move on to the next assizes, were carried with him in a cart.[1] A hung jury is certainly undesirable in the administration of justice, and it is proper for the court to point out the specific disadvantages of a new trial in the case before it. Israel v. United States, 6 Cir., 3 F.2d 743, 745; Shea v. United States, 9 Cir., 260 F. 807; Suslak v. United States, 9 Cir., 213 F. 913, 919. The court may likewise urge dissenting jurors to re-examine their conclusions in the light of the majority view. Allen v. United States, supra. But such statements must not be coercive in effect, for a judge "may advise, and he may persuade, but he may not command, unduly influence, or coerce." Wissel v. United States, 2 Cir., 22 F.2d 468, 471.

Hence each charge must be examined to determine whether or not its effect is to coerce or influence unduly, and a mere formal saving clause alluding to the jury's rights will not suffice to overcome a total effect of coercion. The practice followed here of discussing the dissenting jurors' responsibilities and duties in the language of Allen v. United States, supra, was also employed, in similar form, in United States v. Allis, C.C.Kan., 73 F. 165, 182, affirmed Allis v. United States, supra. As a matter of fact this charge has been often so used. United States v. Winters, 2 Cir., 158 F.2d 674; Bord v. United States, 76 U.S.App.

---

[1] People v. Sheldon, 156 N.Y. 268, 275, 50 N.E. 840, 41 L.R.A. 644, 66 Am.St. Rep. 564, giving a detailed treatment of the historical development of the jury. The cases are collected in 85 A.L.R. 1420. 1450–1452.

D.C. 205, 133 F.2d 313, certiorari denied 317 U.S. 671, 63 S.Ct. 77, 87 L.Ed. 539; Boehm v. United States, 8 Cir., 123 F.2d 791, 812, certiorari denied 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1200. In Stewart v. United States, 8 Cir., 300 F. 769, some criticism of use of the Allen opinion in this form was expressed. We think, however, as we have previously said, that any jury unable to maintain its individual and collective independence against such a charge, standing by itself, "would have been no better than a sounding board for any judicial whisper." United States v. Olweiss, 2 Cir., 138 F.2d 798, 801, certiorari denied Olweiss v. United States, 321 U.S. 744, 64 S.Ct. 483, 88 L.Ed. 1047. The difficulty here arises because the charge was coupled with an inquiry as to the division of the jury.

The issue of coercion of the jury presented by such an inquiry is one which has divided the federal courts; but it now appears to have been settled by the Supreme Court. In the first of two important cases, Burton v. United States, 196 U.S. 283, 305, 308, 25 S.Ct. 243, 249, 49 L.Ed. 482, the trial judge, before giving the Allen charge, had inquired of the jury reporting a disagreement as to their numerical division, but not as to "how many stand for conviction, or how many for acquittal." The foreman had then stated that the jury stood eleven to one. The Supreme Court, after ordering reversal of the judgment below on other grounds, went on to criticize the practice of inquiring as to the proportion of division of the jury, even without the inquiry as to which way the division might be. Stating that this knowledge was not material, since the judge could have made his charge admonishing the jury to make honest endeavors to agree without asking for the information, the opinion continued: " * * * we do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge. Cases may easily be imagined where a practice of this kind might lead to improper influences, and for this reason it ought not to obtain."

After this decision the lower courts divided as to whether the Court's remarks were merely hortatory or whether the criti-cized inquiry constituted reversible error, and the Supreme Court in the later case of Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345, granted certiorari for the purpose of resolving the conflict. Since here the United States has suggested that the conviction may be sustained because the exact numerical division of the jury was not asked for or divulged, it is important to note the cases cited by the Court as disclosing the conflict. On the one side were cases from the Eighth Circuit reversing convictions for such inquiries preceding the Allen charge. While in one of the cases cited, the exact proportion was elicited, St. Louis & S. F. R. Co. v. Bishard, 8 Cir., 147 F. 496, 500, and see also Weiderman v. United States, 8 Cir., 10 F.2d 745, yet in the other two it was not. Stewart v. United States, supra, 8 Cir., 300 F. 769, 782, where the inquiry was "whether the jury was evenly divided, or whether there was a larger preponderance one way or the other," and Nigro v. United States, 8 Cir., 4 F.2d 781, 783, where the judge asked the foreman "without indicating how the jury stood in numbers" to state "whether or not there was a predominance" and the foreman said that there was. In the cases cited to the other view the numerical division was elicited. In Bernal v. United States, 5 Cir., 241 F. 339, 342, one judge dissenting, certiorari denied 245 U.S. 672, 38 S.Ct. 192, 62 L.Ed. 540, the conviction was sustained without citation of precedents. In Quong Duck v. United States, 9 Cir., 293 F. 563, the inquiry was held not ground of error in itself, but error was found because of what the court denominated coercive language in the supplemental charge.

It is against this background that the decision in Brasfield v. United States, supra, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L. Ed. 345, was made with the express intention of settling the law. It ordered a reversal of a conviction because the trial judge had inquired how the jury was divided numerically and was informed by the foreman that it stood nine to three. The Court said:

"We deem it essential to the fair and impartial conduct of the trial that the inquiry itself should be regarded as ground for re-

versal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned."

■ The Court went on to say that "the failure of petitioners' counsel to particularize an exception to the court's inquiry does not preclude this court from correcting the error." It added: "This is especially the case where the error, as here, affects the proper relations of the court to the jury, and cannot be effectively remedied by modification of the judge's charge after the harm has been done." This ruling disposes of any suggestion that counsel here could or must make any further or different objection from what he did. The court was in error in thinking that objections to the charge must be made in the hearing of the jury. Federal Rules of Criminal Procedure, rule 30, 18 U.S.C.A.

The language of the Court is so clear and sweeping that further question seems now impossible. Such seems to be the conclusion of the inferior courts. Thus the decision has been followed in Spaugh v. United States, 9 Cir., 77 F.2d 720 (where the foreman reported eleven-to-one votes on several counts), and extended beyond its exact facts to the case where the foreman answered in the affirmative to the court's question, "Is the jury about evenly divided?" Jordan v. United States, 9 Cir., 22 F.2d 966. In accord is Berger v. United States, 10 Cir., 62 F.2d 438, where the foreman reported a six-to-six division. Though we have no actual decision in this circuit, we have indicated our view that the inquiry alone is ground for reversal under the Brasfield authority. United States v. Olweiss, supra, distinguishing, albeit critically, Quong Duck v. United States, supra. Only once since its rendition has the Brasfield doctrine been even distinguished, and then on a ground which, whatever its general validity, is not available here. In Bowen v. United States, 8 Cir., 153 F.2d 747, certiorari denied 328 U.S. 835, 66 S. Ct. 980, 90 L.Ed. 1611, the delivery of an unsolicited note from the jury foreman to the court, advising it that the jury was deadlocked eleven to one, was held not erroneous, when it led to an unobjectional supplemental charge.[2]

■ Under these circumstances we do not see how these convictions can be sustained upon the authorities. Thus two of the cases approved in the Brasfield case were those of reversals for the eliciting of information that "a large preponderance" [300 F. 783] or "a predominance" of the jury were voting one way. Such inquiries were at least no more direct than the inquiry here as to whether or not there was "a pronounced majority" in agreement, bringing out the answer that there was "a majority, very much." If the fault is in directing the admonitions of the Allen charge toward a minority, indeed a small minority, of the jury, there seems no justification for advancing fine differentiations resting upon the non-use of specific numbers or upon the nomenclature employed in the isolating of that minority. Practically the possibilities of coercion seem the same; legally it would be undesirable further to add to the uncertainties of criminal law administration by such over-refined distinctions. It seems, too, that sustenance cannot be drawn from the jury's long-continued deliberations and apparent care in dis-

---

[2] To the same effect were the earlier cases of Shaffman v. United States, 3 Cir., 289 F. 370, 374; Lucas v. United States, 8 Cir., 275 F. 405, 407. In Boehm v. United States, supra, 8 Cir., 123 F.2d 791, certiorari denied 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1200, the court points out that the volunteered information was not completely informative, since there were three defendants, each charged with many separate offenses.

criminating between the defendants when it finally rendered its verdict. The very failure of the jury quickly to reach a conclusion has been suggested as an indication of a balance so delicate that any error on the judge's part may turn the scales. See Nick v. United States, 8 Cir., 122 F.2d 660, 674, 138 A.L.R. 791, certiorari denied 314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550; also St. Louis & S. F. R. Co. v. Bishard, supra, where the ultimate verdict was delayed for another day's deliberation.

We are bound to say that we do not feel happy over the result, for here the defendants appear to have had the benefit of the most careful deliberation by the jury and it is certainly doubtful whether in fact the judge's remarks may have had any effect in restricting or controlling that deliberation.[3] Here was a long and difficult trial, where the evidence of guilt was substantial, now upset after a seven weeks' effort for this one perhaps doubtful slip. The defendants, out on bail, have already had the benefit of extreme delay in making up the record and preparing the appeal.[4] This case does not make for seemly law administration. But the federal precedents are compelling and we would hardly improve the situation by trying to introduce into the system refined distinctions lacking substance. In view of our conclusion on this point, it does not seem profitable to discuss the other assignments of error.

Reversed and remanded.

---

[3] Witness, too, the doubts expressed by commentators as to the federal rule of reversal in the premises. 8 Wigmore on Evidence 680, 681, n. 3, 3d Ed. 1940 ("but a finical spirit has sometimes rebuked such questions, and has even not scrupled to delay the course of justice for this petty cause"); Orfield, Criminal Procedure from Arrest to Appeal 467, 1947; 41 Harv.L.Rev. 797; 27 Col.L.Rev. 756; 76 U. of Pa.L.Rev. 622; 23 Mich. L.Rev. 296.

[4] Avoidance of the method, set forth in our Rule 17, of presenting an appeal without printing of a record beyond those parts reproduced in the appendices to the parties' briefs, and insistence upon the printing of five large volumes, almost wholly superfluous for consideration of the important issue we have discussed, resulted naturally in controversies over the make-up of the printed books and inordinate delay in presenting the appeal.