221 F.2d 632
 Robert T. ORTON, Hubert Earl Hoffler, Rubin Pierce, Henry Bryant Denby, Joseph Roughton, Gordon Emmett Lemirande, Seldon Guy Hoffler, and William Henry Johnson, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 6944.
 United States Court of Appeals Fourth Circuit.
 March 9, 1955.
 Decided April 12, 1955.
 
 Clyde W. Cooper, Portsmouth, Va., and Virgil H. Goode, Rocky Mount, Va., for appellants.
 L. S. Parsons, Jr., U. S. Atty., Norfolk, Va. (John M. Hollis, Asst. U. S. Atty., Norfolk, Va., on brief), for appellee.
 Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.
 PARKER, Chief Judge.
 
 
 1
 This is an appeal by eight persons who were convicted in the court below of conspiracy to manufacture, remove and conceal distilled spirits in violation of the internal revenue laws. The indictment alleged twenty-nine overt acts done in furtherance of the conspiracy, including the operation of illicit distilleries in Nansemond County, Virginia, and Hertford County, North Carolina. The defendants contend: (1) that verdict should have been directed in their behalf because the proof showed disconnected conspiracies and no general conspiracy and, as to certain of the defendants, that it failed to connect them with any conspiracy, and (2) that the court erred in giving the jury the "Allen" instruction with respect to agreeing on a verdict. We do not think there is merit in either contention.
 
 
 2
 The evidence, which on the motion for directed verdict must be taken in the light most favorable to the prosecution, clearly tends to establish the existence of the criminal conspiracy charged on the part of all of the defendants who were convicted. A conspiracy is properly thought of as a partnership in criminal purposes, United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168; Short v. United States, 4 Cir., 91 F.2d 614; and those who, with knowledge that such partnership exists, aid or assist in carrying out its criminal purposes make themselves parties thereto and are equally guilty with the original conspirators. Comeriato v. United States, 4 Cir., 58 F.2d 557, 558; Simpson v. United States, 4 Cir., 11 F.2d 591, 593. The evidence here, taken as a whole, leaves no doubt that a general conspiracy or partnership in criminal purposes existed for violation of the internal revenue laws relating to liquor and that those defendants who were not originally parties thereto, as the workers at the stills, made themselves parties by aiding and assisting in the carrying out of its criminal purposes. We think, also, that the evidence sufficiently establishes one general conspiracy and not two unrelated undertakings. While two distilling operations are shown, the evidence shows the connection of the defendants with both operations in such a way as to justify the conclusion that both were carried on by the same criminal partnership.
 
 
 3
 The facts are that the defendants Orton, Pierce and H. E. Hoffler formed a partnership in 1952 for the ostensible purpose of dealing in second hand cars and that S. G. Hoffler was a brother of H. E. Hoffler and was working for him. The business license of this partnership was cancelled in January 1953. The evidence does not show that the partnership engaged in any legitimate business, but does show that the members acquired cars which were shown to have been used in the business of liquor running and illicit distilling. Thus, defendant H. E. Hoffler on October 2, 1952, purchased a 1940 Ford Sedan, which was "souped up" for high speed driving, was transferred into the name of Joseph E. Goodman, an apparently fictitious person, and was seized at the time of the seizure of the Nansemond County still on May 14, 1953, where it had been driven by S. G. Hoffler. On August 19, 1952, defendant Pierce in company with defendant Orton acquired a 1947 Ford Truck in the fictitious name of Joseph Beale. Pierce, Orton and H. E. Hoffler were present when this truck was traded to the Cavalier Motor Company for an International truck, which was shown to have been used by Pierce in hauling large quantities of rye meal purchased by him in March and April 1953 in the name of Knight, another fictitious person, and which was seized on April 16, 1953 in West Norfolk loaded with illegal liquor. On April 29, 1953, Orton and Pierce were seen hauling liquor in another automobile in Portsmouth.
 
 
 4
 When the illicit distillery in Nansemond County was seized on May 14, 1953, the defendants Denby, Roughton, Lemirande and S. G. Hoffler were arrested in the immediate neighborhood. Denby and Hoffler, before they were arrested, were observed by the officer to make two trips from a parked automobile to the still. Roughton, who was later arrested at the Hertford County still, came up in a truck containing fourteen one hundred pound bags of sugar, and Lemirande came up in another truck containing twenty-three fifty gallon barrels and thirty-two one pound packages of yeast.
 
 
 5
 Before the seizure of the Nansemond County still, defendant Pierce about March 1, 1953 had talked with one Baker about locating a still on the farm of the latter in Hertford County, North Carolina. About June 1, 1953, after the Nansemond County seizure, he returned with a truck loaded with barrels and set up a still. He made two $50 payments as rent to Baker and two $50 payments were made by Denby. The still was seized July 26, 1953. One of the men working at it was Roughton, who had been arrested previously at the still in Nansemond County. Two others arrested at the still at the same time were the defendant Johnson and one Edwards who was acquitted.
 
 
 6
 This evidence was certainly sufficient to justify the jury in finding that the same group that had been operating in Virginia was conducting the operation in Hertford County, that Orton, Pierce and H. E. Hoffler were connected with the group engaged in the liquor business, as well as the men who were caught at the stills, and that those who were working at the stills must have known that they were assisting a group engaged in violating the law. This was sufficient to establish their guilt. It was not necessary that they know the full extent of the conspiracy or all the persons who were engaged in it. Short v. United States, supra, 91 F.2d 614, 617; Frankfeld v. United States, 4 Cir., 198 F.2d 679, 686. As the evidence justified the finding of a single, over-all conspiracy, it is not necessary that we decide whether the rule of Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, would be applied if the existence of two unrelated conspiracies had been established, or whether such a variance between allegation and proof would be treated as harmless under the rule of Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.
 
 
 7
 The facts with regard to the giving of the Allen charge to the jury are as follows: The judge instructed the jury fully and fairly with regard to the law of the case and the contentions of the parties, specifically charging them, towards the end of his charge, on the presumption of innocence and the burden resting upon the government "to prove a defendant guilty beyond all reasonable doubt before he can be convicted". After the jury had been out for about an hour and a half, he recalled them and gave them an additional instruction as follows:
 
 
 8
 "I want you to know that in a large proportion of cases absolute certainty cannot be expected; and although the verdict must be the verdict of each individual juror and not just a meek acquiescence in the conclusions of his fellow jurors, yet each of you should examine the question submitted with candor and with proper regard and deference to the opinions of each other. It is the duty of jurors to decide cases if they can conscientiously do so. You should listen with the disposition to be convinced to each other's arguments. If much the larger number are for conviction, a dissenting juror should consider whether his doubt is a reasonable one which made no impression upon the minds of so many men equally honest and equally intelligent with himself. If, on the other hand, the majority is for acquittal, the minority should ask themselves whether they might not reasonably doubt the correctness of a judgment which is not concurred in by the majority. And, as I said before, while undoubtedly the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views and by arguments among the jurors themselves. A juror should listen with deference to the arguments and with a distrust of his own judgment if he finds a large majority of the jury taking a different view of the case from what he does himself. Every juror should not go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment or that he should close his ears to the arguments of men who are equally honest and intelligent with himself."
 
 
 9
 This instruction was given as supplemental to the charge, without any inquiry as to how the jurors stood or whether they were having difficulty in reaching agreement, and without any intimation from the jury as to either of these matters. It stated the law as laid down by this court and the Supreme Court, and we see no ground for reversal in the fact that it was given. Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528; Wolin v. United States, 4 Cir., 211 F.2d 770; Lias v. United States, 4 Cir., 51 F.2d 215; Johnson v. United States, 4 Cir., 5 F.2d 471, 475-476.* There was no effort on the part of the trial judge to influence or coerce the jury, and no inquiry as to how the jury was divided, the thing that was held improper in the cases of Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 and United States v. Samuel Dunkel & Co., 2 Cir., 173 F.2d 506, 509.
 
 
 10
 Argument is made that the language of the court in Allen v. United States, supra, departs somewhat from the instruction in Commonwealth v. Tuey, 8 Cush., Mass., 1, upon which the instruction there approved was based. This is, of course, entirely immaterial. The language of the opinion in the Allen case is good sense and good law and the trial court was justified in following it without regard to whether it followed strictly the language of the state court instruction. Complaint is made, too, that the judge did not repeat his charge on presumption of innocence and reasonable doubt when giving the supplemental instruction; but we think he could very well assume that the jury had in mind instructions which he had given only an hour and a half before. Jurors should be given credit for having ordinary intelligence; and if there is one doctrine of the criminal law which they probably understand better than any other it is the presumption of innocence and the burden resting upon the prosecution to establish guilt beyond a reasonable doubt. Nothing said in the supplemental charge had any tendency to becloud this doctrine and there was no reason to repeat what had been said plainly with regard thereto.
 
 
 11
 There was no error and the judgment and sentence of the court below as to each of the defendants will be affirmed.
 
 
 12
 Affirmed.
 
 
 
 Notes:
 
 
 *
 See also Allis v. United States, 155 U.S. 117, 15 S.Ct. 36, 39 L.Ed. 91; Kawakita v. United States, 9 Cir., 190 F.2d 506, 527-528, affirmed 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249; Apodaca v. United States, 10 Cir., 188 F.2d 932, 939; Wright v. United States, 8 Cir., 175 F.2d 384, 388, certiorari denied 338 U.S. 873, 70 S.Ct. 143, 94 L.Ed. 535; United States v. Samuel Dunkel & Co., 2 Cir., 173 F.2d 506, 508-509, certiorari denied 340 U.S. 930, 71 S.Ct. 401, 95 L. Ed. 671; Weathers v. United States, 5 Cir., 126 F.2d 118, 119-120, certiorari denied 316 U.S. 681, 62 S.Ct. 1267, 86 L.Ed. 1754; Boehm v. United States, 8 Cir., 123 F.2d 791, 812; certiorari denied 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1200; rehearing denied 315 U.S. 828, 62 S.Ct. 794, 86 L.Ed. 1223; United States v. McGuire, 2 Cir., 64 F.2d 485, 493, certiorari denied 290 U.S. 645, 54 S.Ct. 63, 78 L.Ed. 560; Dwyer v. United States, 2 Cir., 17 F.2d 696, 698, certiorari denied 274 U.S. 756, 47 S.Ct. 767, 71 L.Ed. 1336. Cf. Nigro v. United States, 8 Cir., 4 F.2d 781; Stewart v. United States, 8 Cir., 300 F. 769