Paul J. D. LOGSDON, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 13137.

United States Court of Appeals
Sixth Circuit.

March 5, 1958.

Stewart, Circuit Judge, dissented.

Rodes K. Myers, and George B. Boston, Bowling Green, Ky., for appellant.

J. Leonard Walker, U. S. Atty., Louisville, Ky., Charles M. Allen, Asst. U. S. Atty., Louisville, Ky., on brief, for appellee.

Before McALLISTER, MILLER and STEWART, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

Appellant was convicted under an indictment which charged in thirty-five counts that he aided, abetted and induced a codefendant Barrett, acting as cashier of the Bank of Whitesville, Whitesville, Kentucky, the deposits of which were insured by the Federal Deposit Insurance Corporation, to wilfully misapply moneys and funds of the insured bank, specifically stating in each count the date, amount and manner of each misapplication. Sections 2(a) and 656 Title 18 U.S.Code.

In the first twenty-seven counts the indictment charged with respect to the manner of the misapplication that the defendant issued a check drawn on the account of Alabama-Kentucky Building Supply Co., Inc., in the insured bank payable to a designated payee and that the cashier honored and paid the check from moneys and funds of the insured bank, when in truth and fact the defendants well knew there were insufficient funds with which to pay the check. The other counts made similar allegations with respect to checks drawn on the account of the appellant in the insured bank. The appellant received a sentence of five years under each count to be served concurrently, together with fines totaling $25,000.

The Bank of Whitesville was closed by Kentucky and Federal Deposit Insurance Corporation bank examiners on September 16, 1954. Their examination disclosed that Barrett had misapplied funds and credits of the bank by means of withdrawing and hiding ledger sheets, juggling accounts, overstating cash on deposits with correspondent banks, and by withdrawing and hiding checks drawn on the Bank of Whitesville so that such checks, although honored by the Bank, were not charged against the accounts of the various depositors. The Alabama-Kentucky Building Supply Company was a corporation almost wholly owned by the appellant. The evidence showed that on the date of the Bank's closing, some 135 depositors, including the appellant individually and the Alabama-Kentucky Building Supply Company, were found to be overdrawn in amounts ranging from 20 cents to $159,613.12. The total uncharged checks amounted to $535,086.-09. The checks which were paid and hidden away without being charged to a depositor's account were not segregated as to depositors but were simply more or less in chronological order, having been hidden away as they arrived at the bank for payment. It was stipulated that the checks involved in the present case, which were hidden away, were issued by the appellant or by his wife on his personal account or on the account of the Alabama-Kentucky Building Supply Company, that they were issued to the payees for value received and that the payees received payment of the checks.

Timely motions by the appellant to dismiss the indictment, for a directed verdict of acquittal and for a new trial, all of which were overruled by the District Judge, raised the questions which are discussed on this appeal.

Section 656, Title 18 U.S.Code, 1948 Edition, provides: "Whoever, being an officer * * * of * * * any * * * member bank * * * willfully misapplies any of the moneys, funds or credits of such bank * * * shall be fined * * * or imprisoned * * *, or both." Prior to the 1948 revision the statute read: "Any officer * * * who * * * willfully misapplies any of the moneys, funds, or credit of such * * * bank * * * *with intent* in any case to injure or defraud such * * * bank * * * *"* (Emphasis added.) Section 592, Title 12 U.S.Code, 1940 Edition. It will be noticed that the 1948 revision used the words "wilfully misapplies" as contained in the earlier statute, but omit-

ted the words "with intent in any case to injure or defraud such * * * bank." Each count of the indictment followed the 1948 wording, charging that Barrett, the cashier, aided, abetted and induced by the appellant, "did wilfully misapply moneys, funds and credits of the insured bank, to-wit, * * *" without using the specific words "with intent" to injure or defraud the bank. [132 F.Supp. 4.]

Appellant contends that the indictment is fatally defective for failure to specifically charge intent, which is one of the essential elements of the offense. United States v. Wicoff, 7 Cir., 187 F.2d 886, 890. Appellant relies upon United States v. Britton, 107 U.S. 655, 669, 2 S.Ct. 512, 27 L.Ed. 520, and Johnson v. United States, 4 Cir., 95 F.2d 813, 815-816. Reliance upon certain language in the opinions in those cases is misplaced. The statutes involved included the element of intent as a necessary element of the crime and the indictments also charged intent. Neither case involved the failure of the indictment to charge intent. The issue involved was whether the words "wilfully misapplied" were sufficient, without more detailed facts, to show how the misapplication took place and that it was unlawful.

■ Appellant's contention was urged upon the District Judge, who ruled in a written opinion that the indictment, in following the words of the statute, was sufficient, in that the words "did wilfully misapply" constituted a sufficient charge of a criminal intent to defraud. United States v. Logsdon, D.C.W.D.Ky., 132 F.Supp. 3, 4. We concur in the ruling for the reasons stated in the opinion. See also: United States v. Ruse, D.C. W.D.Pa., 112 F.Supp. 667. Since the ruling involved only the wording of the indictment, it in no way impairs the necessity of proof by the Government of criminal intent on the part of the appellant. Morissette v. United States, 342 U.S. 246, 264, 274, 72 S.Ct. 240, 96 L.Ed. 288.

■ The most troublesome issue is raised by appellant's contention that the evidence was insufficient to take the case to the jury on the charge that he aided, abetted and induced the cashier to misapply the funds of the bank. We are not here dealing with the guilt of the cashier, which was adjudged through other proceedings. Since appellant was a depositor, but not an officer, director, agent or employee of the bank, he could not be guilty under Section 656, Title 18 U.S. Code, for misapplication of the bank's funds. United States v. Tornabene, 3 Cir., 222 F.2d 875, 877. He was not so charged. Nor would he be guilty on account of the cashier's misapplication of funds unless he aided, abetted or induced the cashier to so act. Section 2(a), Title 18 U.S.Code. That is the offense charged. The absence of any showing of collaboration or association between the person charged and the principal prevents a conviction under that section. United States v. Moses, 3 Cir., 220 F.2d 166. "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' " Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919; United States, v. Peoni, 2 Cir., 100 F.2d 401, 402. Appellant contends that although the evidence shows overdrafts on his checking accounts, it does not show any collaboration between him and the cashier or any attempt on his part to induce the cashier to withhold his checks without charging them to his account although paid out of the bank's funds. Overdrafts alone are not sufficient to show, in and of themselves, a violation of the statute. Seals v. United States, 8 Cir., 221 F.2d 243. The evidence fails to specifically show any reason for the actions of the cashier. The cashier repeatedly stated in his testimony that he didn't know why he did it, and at one point stated that mental fatigue was the only thing he could think of.

A review of the evidence shows more than the usual type of overdraft. During

a period of 4½ years appellant and his wife issued checks aggregating $149,415.14 on his personal account at the bank in which there were total deposits of only $74,710.20, leaving an overdraft of $74,704.94, represented by 565 checks which were hidden away by the cashier. Their joint income tax return for 1953 showed income of $8,271.28. Checks written on this account and paid by the bank in 1953 totaled $13,941.93. The account of the Alabama-Kentucky Building Supply Company was overdrawn in the amount of $159,613.13 over a period of a year and seven months, represented by 557 checks which were hidden away by the cashier. The income tax return of the Company for 1953 showed gross receipts of $117,414.09. The Company issued checks for that year in the total sum of $211,888.20, which were paid. The cashier testified not only that he notified appellant numerous times that he was overdrawn and that appellant would say that he had some money coming in from the sale of property and would cover the overdraft, but also that appellant knew that when his checks arrived at the bank he, the cashier, would honor them and pay for them out of the bank's funds. It was not shown that he received anything of value from the appellant for handling his checks in such manner. It presents a most unusual and somewhat amazing situation.

Appellant's defense was his lack of education, the fact that his personal account and the account of the Company were mixed together, the fact that he did not keep check book stubs and only checked the checks returned by the bank to make sure that the checks bore proper signatures, a very inadequate system of bookkeeping, his belief that he always had enough money in the bank to cover the checks, and a denial that the cashier ever told him he was holding checks which he had paid without charging them to his account.

The crucial issue in the case would seem to be whether appellant knew that the cashier was paying his checks out of the bank's funds and hiding the checks away. If he had such knowledge and continued over a course of years to engage in a course of conduct which so misapplied the funds of the bank and which required the expected collaboration of the cashier to make it successful, we think the evidence was sufficient to take the case to the jury on the issue of aiding, abetting, or inducing. Ray v. United States, 8 Cir., 114 F.2d 508, certiorari denied 311 U.S. 709, 61 S.Ct. 318, 85 L. Ed. 461. The testimony of the cashier that the appellant had such knowledge, although denied by the appellant, coupled with the other undisputed facts showing the payment of checks in an amount exceeding deposits by many thousands of dollars with no return to him of the checks so paid, was sufficient to make this a jury issue.

As hereinabove stated, we agree with appellant that intent to injure the Bank was a necessary element of the crime. Intent may be shown by circumstantial evidence, and in criminal cases, that is usually the only evidence available. A reckless disregard of the interests of the Bank, as shown by the evidence in this case, was sufficient to warrant a finding by the jury of an intent to injure or defraud the Bank. A person is presumed to have intended the natural consequences of his acts. Mulloney v. United States, 1 Cir., 79 F.2d 566, 584; Savitt v. United States, 3 Cir., 59 F.2d 541, 543. We find no error in the instructions of the District Judge upon this issue.

Appellant contends the Court erred in compelling the jurors to reach a verdict after they had reported they were unable to do so. The record does not sustain the contention. On the contrary, the record shows that at 4:35 P.M. the District Judge suggested to the jurors the alternative of suspending deliberations until the next morning instead of continuing for an hour or more longer, and that the foreman of the jury requested that the jurors be permitted to deliberate for about an hour longer. The verdict was returned at 5:36 P.M. In sending the jurors back for further

deliberation, the Judge told them that they had been there for three days, that it was a tremendous expense and burden to the parties to retry any case, and to the Government, that each juror should perform his duty conscientiously and honestly according to the law and the evidence, and that in order to bring twelve minds to a unanimous result it was necessary that they study the issues submitted with candor and with a proper regard and deference to the opinions of others. However, he also said that the Court did not desire that any juror surrender his conscientious convictions and that the verdict to which a juror agrees must be his own verdict and the result of his own convictions and must not be a mere acquiescence in the opinions and conclusions of his fellow jurors. These instructions were substantially in accord with instructions approved by the Supreme Court in Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528, and, in our opinion, did not constitute error. See also: Boehm v. United States, 8 Cir., 123 F.2d 791, 812, certiorari denied 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1200, rehearing denied 315 U.S. 828, 62 S.Ct. 794, 86 L.Ed. 1223; Orton v. United States, 4 Cir., 221 F.2d 632, 634–635, certiorari denied 350 U.S. 821, 76 S.Ct. 47, 100 L.Ed. 734.

We have considered other contentions of the appellant, but find no prejudicial error with respect thereto.

The judgment is affirmed.

STEWART, Circuit Judge (dissenting).

As pointed out in the majority opinion, the appellant could not be guilty as a principal under this criminal statute, but only as an aider or abettor. United States v. Tornabene, supra. As also pointed out, a finding of such guilt could not be based upon the appellant's overdrafts alone. Seals v. United States, supra. To convict, the jury had to find collaboration or association between the appellant and the bank's cashier. United States v. Moses, supra.

It is not enough that the appellant may have wilfully created the occasion or the opportunity for the cashier's misapplication of the funds, even though the appellant may have foreseen these consequences of his own misconduct. United States v. Peoni, 2 Cir., 1938, 100 F.2d 401, 402. Aiding and abetting "involves much more than merely 'causing an act to be done.'" United States v. Chiarella, 2 Cir., 1950, 184 F.2d 903, 909.

What prevents me from joining in affirmance of the judgment is the belief that the trial court's instructions were inadequate to apprise the jury of these principles. The jury were instructed that if the defendant issued checks knowing that they would be paid by the cashier, although both knew that there were insufficient funds in the defendant's accounts to cover the checks, then the defendant was guilty of aiding and abetting the cashier in violating the statute.[1]

The jury could thus have found the appellant guilty of aiding and abetting without finding the association, participation or collaboration in the criminal venture which, as the majority opinion points out, the law requires. Nye & Nissen v. United States, supra; see Morei v. United States, 6 Cir., 1942, 127 F.2d 827, 830–831.

It will not do to say that the terms of the statute making principals of aiders

---

1. The pertinent instructions were as follows: "Now, upon the whole case and after considering all the evidence you are satisfied beyond a reasonable doubt that the defendants J. D. Logsdon and Regina Logsdon committed the acts charged in the indictment in that they aided, abetted, counseled and induced Bernard Ware Barrett to wilfully misapply moneys, funds and credits of the insured bank by issuing checks drawn on the bank in the sum specified in the indictment knowing that Barrett would honor and pay these checks from funds of the bank when both Barrett and these defendants knew that there were insufficient funds in the accounts against which the checks were drawn with which to pay them, if you believe that beyond a reasonable doubt, it's your duty to find the defendants guilty. If you do not so believe, it's your duty to acquit them."

and abettors are self-explanatory and required no further elucidation. 18 U.S. C.A., § 2(a). This has been called "an area of law which is difficult enough for the seasoned attorney." Nye & Nissen v. United States, supra, 336 U.S. at page 629, 69 S.Ct. at page 774 (dissenting opinion). Moreover, the deficiency of these instructions was not that they failed to explain the law as fully as might be desirable. The instructions were erroneous because they were subject to an interpretation completely at variance with the settled principles of law which are recognized and restated in the majority opinion.

I would reverse the judgment of conviction and remand the case for a new trial.