UNITED STATES of America,
Plaintiff–Appellee,

v.

Norman K. HUGHES,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Nell THOMPSON,
Defendant–Appellant.

Nos. 88–5843, 88–5928.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 28, 1989.

Decided Dec. 13, 1989.

Rehearing and Rehearing En Banc
Denied Feb. 8, 1990.

Louis DeFalaise, U.S. Atty., Charles L. Dause, Asst. U.S. Atty. (argued) Office of the U.S. Atty., Lexington, Ky., for plaintiff-appellee.

Gary J. Sergent (argued), O'Hara, Ruberg & Taylor, Covington, Ky., for defendant-appellant.

Before MERRITT, Chief Judge, and RYAN, Circuit Judge, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Appellant Hughes and Appellant Thompson appeal from convictions for aiding and abetting the misapplication of federally insured bank funds in violation of 18 U.S.C. § 2 and § 656. Appellant Thompson also appeals from a conviction for conspiracy to defraud a federally insured bank in violation of 18 U.S.C. § 371. For the reasons stated below, we affirm these convictions.

## FACTS

During an audit in late 1983, a loss of approximately $970,000 was discovered at the First National Bank of Louisa, Kentucky. Investigation showed that the loss resulted from the Bank's practice of "laying out" checks returned for insufficient funds. That is, instead of creating overdrafts in customers' accounts, the bookkeeping supervisor, Lynn Courtney, would hold the returned checks in her drawer until the customer deposited funds to cover the check. Courtney testified that the "laying out" procedure was a long-standing practice of which Bank officers were aware. However, some customers and employees failed to deposit sufficient funds in the Bank to cover the outstanding checks.

Two of the customers with large overdrafts were Appellants Hughes and Thompson. Hughes is a self-employed watchmaker and owner of a small jewelry and religious book store in Louisa. He had both personal and business accounts at the Bank. Approximately $36,000 of Hughes' checks were honored by the Bank although there were insufficient funds in his account to cover them. Thompson ran a restaurant and a store in Louisa. She had personal, business, and money order accounts at the Bank. Due to the disarray of the Bank's records, the amount that Thompson was

overdrawn is unclear, and estimates range from $12,000 to $77,000.

## HUGHES

### A. Insufficiency of Evidence for Aiding and Abetting Conviction

Appellant Hughes argues that the evidence was insufficient to convict him of aiding and abetting Courtney in the misapplication of bank funds. To be guilty of aiding and abetting a defendant must have associated with the criminal venture and participated in the criminal venture. *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949); *United States v. Luxenberg*, 374 F.2d 241, 249 (6th Cir.1967).

Hughes contends that the Government has failed to prove his requisite association and participation in the crime. Hughes claims that he never asked Courtney to hold his checks and that initially he was unaware that his checks were being held. Most of his checks were written by his bookkeeper, a former bank employee who had worked in bookkeeping and was very likely aware of the "laying out" procedure. Several of the checks held by Courtney were written by Hughes personally. After Hughes knew that he was overdrawn, he applied for a loan at the Bank to cover the shortage, but his application was turned down. Furthermore, Hughes asserts that his overdraft situation was worsened by the Bank's policy of paying sight drafts from his business creditors without checking his account to ascertain if sufficient funds were on deposit to cover the draft.

The Government asserts that substantial overdrafts were limited to accounts held by a small group of employees and customers including Hughes. The overdrafts on these accounts represented a pattern far removed from the occasional accidental overdraft due to a miscalculation which is corrected within a few days. Furthermore, Hughes made admissions to an FBI agent that he had contacted Courtney about holding his checks and knew that $25–30,000 remained unpaid. Hughes admits the statements, but claims that he made them because his secretary advised him that if he made them, he would not be prosecuted. Additionally, Hughes gave Courtney a pearl necklace at Christmastime one year with the explanation that without her he would be out of business. Hughes claims that he gave her the necklace as a business ploy to stimulate customer referrals to his store.

 We note that overdrafts alone are insufficient to establish a violation of 18 U.S.C. § 656.[1] *Logsdon v. United States*, 253 F.2d 12, 14 (6th Cir.1958); *Seals v. United States*, 221 F.2d 243, 245 (8th Cir. 1955). However, in this circuit there is clear precedent for the proposition that a conviction for aiding and abetting should be affirmed when a bank customer has knowledge that his checks are being paid out of bank funds and hidden by a cashier. *Logsdon, supra.*

The facts of *Logsdon* are quite similar to the present case. Logsdon had business and personal accounts at a bank in Whitesville, Kentucky. He was substantially overdrawn in both accounts because the cashier at the bank paid Logsdon's checks although there were insufficient funds in his account and then hid the checks. When the cashier's misdeeds were discovered, Logsdon was convicted of aiding and abetting the cashier in the misapplication of bank funds. Like the appellants in this case, Logsdon contended that he had no agreement with the cashier to pay and hide

---

1. The dissent reiterates this point, but goes on to observe that unlike *Logsdon*, "the government here did not prove that either customer got bank employees to hide the overdrafts from bank officers or examiners for the purpose of defrauding the bank." We suggest that the *Logsdon* court's statement that "the crucial issue in the case would seem to be whether appellant knew that the cashier was paying his checks out of the bank's funds and hiding the checks away," 253 F.2d at 15, is inconsistent with the dissent's inferred conclusion that Logsdon "got bank employees to hide the overdrafts." Additionally, the court's observation that the evidence failed to show any reason for the cashier's actions and Logsdon's denial that he knew that the cashier was hiding his checks also would seem to belie the dissent's conclusion. *Id.* at 14, 15.

the checks. In analyzing the sufficiency of the evidence against Logsdon, the court stated:

> The crucial issue in the case would seem to be whether appellant knew that the cashier was paying his checks out of the bank's funds and hiding the checks away. If he had such knowledge and continued over a course of years to engage in a course of conduct which so misapplied the funds of the bank and which required the expected collaboration of the cashier to make it successful, we think the evidence was sufficient to take the case to the jury on the issue of aiding, abetting, or inducing. *Id.* at 15.

Although Logsdon denied knowledge that his checks were being held and hidden, the court concluded that the cashier's testimony to the contrary, as well as the undisputed fact that checks which exceeded deposits by thousands of dollars were never cancelled and returned to him, was sufficient to make this a jury issue. *Id.*

Further, the court addressed the issue of intent to injure the bank, a necessary element of the crime. After establishing that intent can be shown by circumstantial evidence, the court concluded that "reckless disregard of the interests of the Bank, as shown by the evidence in this case, was sufficient to warrant a finding by the jury of an intent to injure or defraud the Bank." *Id.*

As in *Logsdon, supra,* there is conflicting evidence in this case on Hughes' knowledge that his checks were being held by Courtney. At one point, Hughes admitted to an FBI agent that he had contacted Courtney about holding his checks. He later recanted this admission. However, this evidence, coupled with the fact that Hughes' checks exceeded his deposits by more than $36,000 and the fact that the checks were never returned to him, was sufficient to make it a jury issue. Such fiscal laxity can be construed as reckless disregard for the interests of the Bank which could warrant a jury finding of intent to injure or defraud the Bank. The jury evaluated this evidence and returned a guilty verdict on the charge of aiding and abetting.

In addressing sufficiency of the evidence, a reviewing court does not act like a trier of fact in a *de novo* trial. Rather, after viewing the evidence in the light most favorable to the prosecution, the court determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Gallo,* 763 F.2d 1504, 1518 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Furthermore, circumstantial evidence is sufficient to sustain a conviction and it does not have to remove every rational hypothesis except guilt. *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir. 1986), *cert. denied,* 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986). After reviewing the evidence in this case in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Thus, we will not disturb the verdict of the jury, and Hughes' conviction for aiding and abetting the misapplication of bank funds is affirmed.

### B. Motion for Continuance

■ Hughes also argues that the trial court committed reversible error in denying his motion for continuance. Hughes had originally retained counsel who subsequently withdrew from the case. The court then appointed an attorney for Hughes. However, nine days before trial, Hughes contacted the trial judge's office to complain that the appointed counsel had not kept appointments with him and was unprepared to handle his case. Six days before trial, the judge appointed new counsel for Hughes. Four days prior to trial, Hughes moved for a continuance which was denied. Hughes now contends that the denial of the continuance prejudiced his case and therefore constitutes an abuse of the trial court's discretion requiring reversal. We cannot agree.

Prior to jury selection, the judge questioned Hughes' defense counsel on his readiness to begin the trial. Defense counsel stated that he had met extensively with Hughes, obtained the records from the Government, interviewed most of the witnesses, and believed that he was ready to begin the trial. The judge also questioned Hughes who stated that he was satisfied to begin the trial. We view this colloquy as a waiver of the issue, and accordingly, deny relief. Alternatively, the denial of the motion for continuance was not an abuse of discretion.

## THOMPSON

### A. Insufficiency of Evidence for Aiding and Abetting Conviction

■ Like Hughes, Thompson claims that there is insufficient evidence to sustain her conviction for aiding and abetting Courtney in the misapplication of bank funds in violation of 18 U.S.C. § 656. Thompson contends that she did not have any agreement or understanding with Courtney to hold her checks. Furthermore, Thompson's overdraft situation was exacerbated by the fact that a loan collection officer at the Bank was deducting payments on recourse loans from Thompson's checking account. At one point when Thompson was notified by a Bank employee that her account was overdrawn, she borrowed money from a loan company in another county to make a deposit. On these facts, Thompson claims that the evidence is insufficient to sustain her conviction for aiding and abetting.

However, there is also evidence that Thompson knew that Courtney was holding her checks. Courtney held five of Thompson's checks for a period of four years. Courtney testified that she had talked to Thompson about this situation. Under the analysis in *Logsdon v. United States*, 253 F.2d 12 (6th Cir.1958), the evidence that Thompson knew the checks were being paid from Bank funds and hidden to cover the situation is sufficient to submit the case to the jury on the charge of aiding and abetting. Thompson's failure to deposit sufficient funds to cover checks which had been held for a period of four years shows

a reckless disregard for the interests of the Bank and as such is sufficient to support a jury finding that she had the requisite intent to injure the Bank. In reviewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, we affirm Thompson's conviction for aiding and abetting Courtney in the misapplication of bank funds.

### B. Insufficiency of Evidence on Conspiracy Conviction

■ Thompson also claims that the evidence is insufficient to sustain her conviction for conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Thompson claims that there is no evidence of the requisite element of an agreement between her and Courtney. As the Government notes, proof of some kind of formal agreement is not necessary to establish a conspiracy. However, the existence of a conspiracy may be inferred from acts done with a common purpose. *United States v. Luxenberg*, 374 F.2d 241, 250 (6th Cir.1967). Furthermore, in establishing the existence of a conspiracy to violate federal law, a tacit or mutual understanding among the parties is sufficient to show a conspiratorial agreement. *E.g., United States v. Ellzey*, 874 F.2d 324 (6th Cir. 1989); *United States v. Reifsteck*, 841 F.2d 701 (6th Cir.1988); *United States v. Bavers*, 787 F.2d 1022 (6th Cir.1985) (citing *United States v. Toney*, 527 F.2d 716 (6th Cir.1975), *cert. denied sub nom., Pruitt v. United States*, 429 U.S. 838, 97 S.Ct. 107, 50 L.Ed.2d 104 (1976)). Although Thompson and Courtney may not have had an explicit agreement, the facts that Courtney held some of Thompson's checks for a period of four years and discussed this matter with Thompson are sufficient to show at least a tacit agreement or mutual understanding between the parties. In another conspiracy case, this court stated: "In considering the sufficiency of the evidence, we do not determine whether it establishes guilt beyond a reasonable doubt, but only that the evidence would permit the triers of

facts to find the defendants guilty beyond a reasonable doubt." *United States v. Levinson,* 405 F.2d 971, 985 (6th Cir.1968), *cert. denied,* 395 U.S. 958, 89 S.Ct. 2097, 23 L.Ed.2d 744 (1969), *reh'g denied,* 396 U.S. 869, 90 S.Ct. 36, 37, 24 L.Ed.2d 124 (1969). Viewing the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence for the triers of fact to find Thompson guilty, and the jury so found. We decline to disturb their finding. Accordingly, Thompson's conviction for conspiracy is affirmed.

MERRITT, Chief Judge, dissenting.

I do not believe that the government has shown that the defendants in this direct criminal appeal had a sufficient intent to defraud the bank, an essential element of the crime of misapplication of bank funds under 18 U.S.C. § 656. Overdrafts alone obviously do not establish sufficient grounds for convicting a customer of defrauding his bank. *United States v. Christo,* 614 F.2d 486, 493 (not "even one case upholding a conviction ... involving unconcealed checking account overdrafting"), *reh'g denied,* 618 F.2d 1390 (5th Cir.1980). Unlike the case of *Logsdon v. United States,* 253 F.2d 12 (6th Cir.1958), the case relied upon by the Court, the government here did not prove that either customer got bank employees to hide the overdrafts from bank officers or examiners for the purpose of defrauding the bank. Mrs. Courtney, the bank officer who "held the checks," testified that Hughes had no knowledge of the bank's procedure or any knowledge of how she handled the overdrafts other than the fact that she did not insist on immediate payment. The same is true of the case against defendant Thompson. There is no proof that the defendants did not intend to pay the overdrafts or that they intended in some way to defraud the bank by concealing the overdrafts or that they had knowledge of any "false entries" made by officers of the bank.

Both defendants were customers of the First National Bank in Louisa, Kentucky, a small mountain village near the West Virginia border. The bank had a history of allowing customers to make interest-free loans by overdrafting their accounts. The bank officers allowed this policy to continue either through incompetence or Christian charity.

Our Court's disposition of this case establishes a dangerous precedent, an invitation to banks and government enforcement officers to prosecute or threaten to prosecute bank customers in federal court for the failure to pay overdrafts that bank officers themselves encouraged. In such cases, there is no falsehood or lie relied upon by the officers of the bank. The bank officers simply had a policy of covering overdrafts by some customers.

Further, there is no showing here that depositors were defrauded. When shareholders of a bank employ directors and bank officers who have a policy of selectively not collecting overdrafts, customers of the bank who benefit from the policy should not be sent to jail as scapegoats for the misadventures of the bank's management. This prosecution is another case in which the government has gone beyond the verge and unduly extended § 656. See Judge Friendly's opinion in *United States v. Docherty,* 468 F.2d 989, 993 (2nd Cir. 1972), for a similar case in which the court reversed the conviction of a customer concluding that it was a case of "maladministration of the affairs of the bank, rather than criminal misapplication of its funds" participated in by the customer. Accordingly, I respectfully dissent.