UNITED STATES of America

v.

Ralph E. CADES et al.
Appeal of William N. BLOOM.
No. 73–1730.

United States Court of Appeals,
Third Circuit.

Argued Jan. 14, 1974.

Decided April 16, 1974.

---

Jacob Kossman, Philadelphia, Pa., for appellant.

Robert E. J. Curran, U. S. Atty., Richard M. Meltzer and Carmen C. Nasuti, Asst. U. S. Attys., Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and KALODNER and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Appellant, William Bloom, contests the district court judgment, entered after a jury verdict, finding him guilty of conspiring with and aiding and abetting one Ralph Cades in violation of 18 U.S. C. § 656 (1970), willful misapplication of federally-insured bank funds by a bank officer, director, agent or employee.[1] Bloom was president of Scooper-Dooper, Inc. which maintained checking accounts at City Bank of Philadelphia ("City Bank") and Pennsylvania Bank of New Jersey ("Pennsauken Bank"). This case grew out of Bloom's operation of a "check-kiting" scheme involving alternating deposits of worthless checks drawn on Scooper-Dooper's account at one bank to cover equally worthless checks on its account at the other. Cades, as president and chairman of the board of City Bank, approved payment of Scooper-Dooper's City Bank checks.

When this case went to trial, Bloom was one of four co-defendants. During trial, the district judge granted motions, not contested by the Government, dismissing the charges against two defendants for lack of evidence. At the same time, the court approved an agreement between Cades and the Government severing him from the trial and providing that at the completion of the trial Cades enter pleas of *nolo contendere* to three counts of violating § 656. The Government agreed to a dismissal with prejudice of the remaining counts against Cades, including a conspiracy count. The trial continued with Bloom the sole defendant. He was convicted and contends here, *inter alia*, that the evidence against him was not sufficient to sustain his conviction.

## I. REQUISITES OF AIDING AND ABETTING

In order to convict a defendant of aiding and abetting the commission of a crime, it is first essential that the Government demonstrate that the substantive crime has been committed. United States v. Tornabene, 222 F.2d 875, 878 (3d Cir. 1955). We shall assume that the Government presented sufficient evidence to warrant conviction of Cades under the statute defining the

---

1. The relevant portion of 18 U.S.C. § 656 (1970) provides:

    Whoever, being an officer, director, agent or employee of . . . any . . . insured bank . . . willfully misapplies any of the moneys, funds or credits of such bank . . . shall be fined mot more than $5000 or imprisoned not more than five years, or both . . . .

    Aiding and abetting is made an offense by 18 U.S.C. § 2(a) (1970). Conspiracy is made an offense by 18 U.S.C. § 371 (1970).

principal offense, 18 U.S.C. § 656 (1970).[2]

To convict Bloom of aiding and abetting, the Government must further show that he facilitated Cades' violation of § 656 and that Bloom intended to facilitate that violation. See United States v. Docherty, 468 F.2d 989, 992–993 (2d Cir. 1972).

> In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his actions to make it succeed." L. Hand, J., in United States v. Peoni, 100 F.2d 401, 402.

Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949); accord, United States v. Barber, 429 F.2d 1394, 1397 (3d Cir. 1970).

■ Bloom's check-kiting actions clearly facilitated Cades' misapplication of bank funds through approval of worthless Scooper-Dooper checks. Bloom contends, however, that he did not intend to aid Cades' violation of § 656. Were § 656 violated by a bank officer's misapplication of bank funds, without more, it would be considerably easier for us to dispose of Bloom's contention. However, Section 656 also requires that the bank officer intend to defraud the bank.[3] Bloom argues that there is no evidence showing that he was aware of Cades' intent to defraud City Bank, much less that Bloom intended to aid Cades' commission of a crime. Certainly, Bloom intended to defraud City Bank by his own actions. That intent might, assuming other elements of the crime are proven, suffice to convict Bloom of a substantive crime such as "mail fraud."[4] The Government has chosen instead to charge him with aiding and abetting Cades' violation of § 656 and consequently must prove Bloom's desire not to defraud City Bank but to help Cades do so.

## II.  SUFFICIENCY OF EVIDENCE OF INTENT TO AID AND ABET

■ We assume in analyzing the sufficiency of the evidence that the government may meet its burden by showing (1) Cades' intent to defraud City Bank, (2) Bloom's awareness of it, and (3) subsequent actions by Bloom facilitating such fraud; from this evidence, we presume that the jury could reasonably infer Bloom's intent to aid and abet Cades' violation of § 656. After carefully searching the record, we are unable to find such evidence. The evidence introduced is, in summary form, as follows.

The Scooper-Dooper account in City Bank had a history of overdrafts. In September, 1969, shortly after Cades took over as president of City Bank, Cades required Bloom to personally guarantee the renewal of an existing loan to Scooper-Dooper of $97,000 and extended an additional loan of $50,000. Cades required that a balance of $50,000 be maintained in the account, and Bloom promised to use an expected capital investment in Scooper-Dooper to pay off the loans and to invest in additional City Bank Certificates of Deposit.

At the time of the additional loan Cades apparently ordered bank em-

---

2.  Bloom contests this assumption. In view of our disposition of the case on other grounds, however, we find it unnecessary to decide this question.

3.  Courts have uniformly held that although the 1948 revision of 18 U.S.C. § 656 omitted the previously specified requirement of an intent "to injure or defraud" the bank, 12 U.S.C. §§ 592, 597 (1945), this intent remains a critical element of the offense. See, e. g., United States v. Docherty, 468 F.2d 989, 994–995 (2d Cir. 1972).

4.  Check-kiting, per se, does not appear to be a federal offense. But proof of a check-kiting scheme when coupled with proof of the statutory requirement of a mailing, has been held to state a violation of the mail fraud statute, 18 U.S.C. § 1341 (1970). United States v. Fromen, 265 F.2d 702, 703 (2d Cir. 1959); Stevens v. United States, 227 F.2d 5, 8 (8th Cir. 1958). In the instant case, Bloom was not charged with mail fraud.

ployees to give special attention to the Scooper-Dooper account. The account thereafter was subject to personal monitoring by City Bank employees rather than automatic processing by bank computers. Nevertheless, in the next several months Bloom repeatedly drew checks on Scooper-Dooper's City Bank account when there were insufficient funds, actually collected, in that account to provide for full payment.

Cades was regularly advised by his employees of the overdrafts and directed them to contact Scooper-Dooper about covering them. Scooper-Dooper covered its overdrafts by depositing in City Bank checks drawn on its account in Pennsauken Bank, an account which was apparently never blessed with sufficient funds to cover outstanding checks. The immediate effect of the deposit, however, was to increase the "ledger balance" of Scooper-Dooper's City Bank account above the amount of the outstanding checks. Then, although Cades knew the Scooper-Dooper checks drawn on the Pennsauken Bank had not cleared that bank, he directed the checks drawn against City Bank to be honored.

From this evidence, the Government would find reasonable inference of Bloom's intent to aid Cades defraud City Bank through purposeful mishandling of its funds. On review of a conviction, the Government is entitled to the benefit of all inferences that reasonably may be drawn from the evidence. See United States v. De Cavalcante, 440 F.2d 1264, 1273 (3d Cir. 1971). Clearly there is no direct evidence of Bloom's intent to aid and abet Cades. Nor is there direct evidence of all the elements that must be shown to allow inference of the requisite intent. Assuming that the evidence shows Cades' purpose to defraud City Bank and Bloom's actions facilitating such fraud, we nonetheless find no evidence that Bloom was aware of Cades' fraudulent purpose.

Because such awareness is usually difficult to prove directly, courts have allowed inference of such awareness to be drawn from other circumstances, and in turn have allowed this inference to serve as a basis for finding the necessary intent to aid and abet. Evidence of "collaboration" or "association" between the principal and his aides may be used to infer the aider's awareness of the principal's intent. See Logsdon v. United States, 253 F.2d 12, 14–15 (6th Cir. 1958); United States v. Moses, 220 F.2d 166, 169 (3d Cir. 1955). There is no evidence of Bloom's collaboration or association with Cades in a criminal scheme. The record does reveal that Bloom visited Cades on a few occasions, but the only subject the record shows they discussed was Bloom's increased loans from the bank. That alone cannot show collaboration.

Reaching to a third level of inference, we find insufficient evidence from which a jury could infer collaboration between Bloom and Cades. Evidence that courts have found indicates collaboration, such as profit by the bank officer from the check-kiting scheme or attempts by the bank officer to conceal his actions, is conspicuously absent here. See Benchwick v. United States, 297 F.2d 330, 332–333 (9th Cir. 1961). There is absolutely no evidence of any benefit to Cades from Bloom's check-kiting scheme, by direct payment from Bloom or otherwise. Indeed, Cades and others in his family were large stockholders in City Bank; they held no interest, so far as the record reveals, in any competing bank or in Scooper-Dooper, Inc. Thus, Cades had no financial motive to cooperate with Bloom in defrauding City Bank.

The record is similarly devoid of evidence that Cades made any attempt to conceal what he was doing with respect to the Scooper-Dooper account. Rather than hiding these transactions from City Bank employees, Cades openly authorized the appropriate employees to proceed as they did with respect to the Scooper-Dooper account. Neither Cades nor any of his subordinates manipulated bank statements or made false entries

in the bank records to cover the questioned transactions.

From all the evidence shows, Bloom could well have believed that he was being very successful in practicing an artful subterfuge on City Bank. He could have believed that Cades was nothing more than a hoodwinked conduit making possible the operation of his scheme; Bloom might have thought that Cades was acting in what he perceived to be the bank's best interest, intending only to extend Scooper-Dooper credit by honoring checks that were not immediately good. The record does not support an inference, even three times removed from the evidence, that Bloom intended to aid and abet Cades' violation of § 656. We conclude that the Government failed to prove its case beyond a reasonable doubt; Bloom's conviction on the aiding and abetting counts must be reversed.

### III. CONSPIRACY TO VIOLATE § 656

■ Although the elements that must be proved to convict Bloom for conspiracy differ from those necessary to convict him for aiding and abetting, the deficiencies of the record that preclude conviction of aiding and abetting also prevent his conviction as a conspirator. To convict Bloom of conspiring with Cades, the Government must establish the existence of an agreement between them to defraud City Bank. See United States v. De Cavalcante, *supra* 440 F.2d at 1272. We realize that conspiratorial agreements generally are proved by circumstantial evidence; we have reviewed above the evidence that is relied upon by the Government. That evidence no more establishes criminal agreement between Bloom and Cades for conspiracy purposes, even by inference, than it does collaboration between them relevant to aiding and abetting.

The judgment of the district court will be reversed.