UNITED STATES of America
v.
Stanley WILLIAMS.
Crim. No. 74–704.

United States District Court,
E. D. Pennsylvania.

March 6, 1975.

Robert E. J. Curran, U. S. Atty., James C. Sommar, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Thomas C. Carroll, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

BECHTLE, District Judge.

■ Defendant Stanley Williams is charged in two counts of a six-count indictment with aiding and abetting the willful misapplication of bank funds by a bank employee, in violation of 18 U.S.C. §§ 656 and 2. The defendant was tried before the Court sitting without a jury. Based on the evidence presented and the law pertaining to the charge of aiding and abetting, I find the defendant guilty beyond a reasonable doubt of the offenses charged.

The following operative facts were adduced at the trial of this matter: Sometime between the close of business on July 10, 1974, and the outset of business on July 11, 1974, money orders numbered 3800935 through 3800943 were removed from their proper place in the Western Savings Bank located in Levittown, Pennsylvania. The removal of the nine

money orders from the bank without consideration therefor was discovered following the completion of a "reconciliation" process undertaken by bank officials. At the time the money orders were removed from the bank, Isaac Boykin, another defendant herein,[1] was employed as a bank guard at the Western Savings Bank. Due to his position as a bank guard, Boykin had access to both the place where the blank money orders were kept and the machine used by authorized bank employees to write the desired monetary amount upon the money orders. At all relevant times, defendant knew Boykin was employed at the bank. On July 11, 1974, Boykin visited Williams in the latter's home, gave him money order number 3800939, and asked the defendant to purchase a certain used car for him (Boykin) from Bristol Ford with the money order. The next day, July 12, 1974, Boykin again came to the defendant's home and gave him money order number 3800936. The money orders given to the defendant by Boykin were two of the nine money orders removed from the Western Savings Bank on or about July 10, 1974.

The evidence showed that on the afternoon of July 11, 1974, money order number 3800939 ($999) was delivered to Bristol Ford, Bristol, Pennsylvania, by the defendant as partial payment for one 1970 Ford Thunderbird. Although the defendant had the automobile registered in his name, he admitted that it was his intention to purchase it for and deliver it to Boykin the following day, which he did. The net evidentiary effect of this episode is that Boykin was given a car by the defendant that was titled in the defendant's name, an application for change of title was never made, nor for that matter intended by the defendant.

Thereafter, on July 12, 1974, the defendant presented money order number 3800936 to a teller at the Philadelphia National Bank in Morrisville, Pennsylvania. The above-described money order was cashed by the bank and the proceeds ($858) were given to the defendant. The defendant kept approximately $130 of the proceeds and gave the remainder to Boykin.

Special Agent Paul Nolan of the Federal Bureau of Investigation testified that on August 1, 1974, he visited the defendant at his home in Morrisville, Pennsylvania. According to the testimony of Special Agent Nolan, the defendant stated that he won the money orders in a "crap game." On August 7, 1974, the Agent met again with the defendant. The Agent testified that during the second interview the defendant admitted lying about the source of the money orders and then told the Agent that he had received the money orders from Boykin.

In addition to explaining from whom and under what circumstances the two money orders were received, the defendant testified that at the time he bought the used car and cashed the money order at the Philadelphia National Bank he was unaware that the money orders had been fraudulently and unlawfully removed from the Western Savings Bank. The defendant claimed at the trial that Boykin told him that the money orders had come from the settlement of an automobile accident case. With respect to the money order received on July 11, 1974, the defendant stated that Boykin gave him the money order and asked him to buy the automobile because he (Boykin) was afraid the car would be sold by the time he would be able to leave his place of employment late that afternoon. The defendant further testified that he cashed the second money order given to him by Boykin on July 12 because Boykin was in a hurry to return to work.

■ Two critical elements must be present before a defendant may properly be convicted of aiding and abetting the commission of a crime. First, the Government must prove that the substantive crime has been committed. United States

1. The case against defendant Isaac Highsmith Boykin has not been brought to trial in that Boykin is a fugitive from justice.

v. Tornabene, 222 F.2d 875, 878 (3rd Cir. 1955). Second, it must be shown that the defendant charged with aiding and abetting had knowledge of the substantive offense and acted with the intent to facilitate the commission of such offense. United States v. Cades, 495 F.2d 1166, 1168 (3rd Cir. 1974); United States v. Docherty, 468 F.2d 989, 992 2d Cir. 1972).

With regard to the question of whether the substantive offense had been committed, the Government proved beyond a reasonable doubt that Boykin willfully misapplied the funds of a federally-insured bank with the intent to defraud such bank.

The evidence conclusively demonstrated that Boykin was one of a limited number of bank employees who had access to the blank money orders and the machine used to imprint the requested amount on the money orders. The evidence further showed that Boykin was employed at the bank on July 10 and 11, 1974, and that he delivered to the defendant two Western Savings Bank money orders, one on July 11 and the other on July 12, 1974. That the bank received no consideration for the money orders was established by the testimony of the bank employees. In sum, the Government proved the substantive violation of 18 U.S.C. § 656.

■ As outlined above, in order to convict the defendant of aiding and abetting, the prosecution must show that the defendant was aware of Boykin's intent to defraud the bank and thereafter took action to facilitate the perpetration of the fraud upon the bank. From the evidence of defendant's awareness of the principal's intent to defraud and action taken by him which in fact facilitated such fraud, the Court can reasonably infer the defendant's intent to aid and abet Boykin's violation of § 656. United States

v. Cades, supra, 495 F.2d at 1168; United States v. Johnson, 447 F.2d 31, 33 (7th Cir. 1971). There can be no dispute that the defendant's purchase of the automobile and cashing of the money order for Boykin in fact furthered the violation of § 656. The determinative question here is whether the defendant was aware of Boykin's intent to defraud the bank at the time he (defendant) purchased the automobile and cashed the money order. While no direct evidence of the defendant's guilty knowledge was presented, the record contains sufficient circumstantial evidence from which the Court could reasonably infer that the defendant intended to aid and abet the violation of § 656.[2]

It must be noted that when first approached by Special Agent Nolan, the defendant lied as to the source of the two money orders. Moreover, the defendant's testimony with regard to the origination of the "crap game" story was contrary to Special Agent Nolan's testimony that during the second interview on August 7, 1974, the defendant stated that he had conceived the story about the "crap game." At the trial, the defendant testified that Boykin told him to use the "crap game" fabrication if ever approached concerning the source of the two money orders.

The defendant also knew that Boykin worked in a bank. It is inconceivable to this Court that the defendant did not know or realize that Boykin had obtained the money orders in an unlawful or fraudulent manner when Boykin asked him (defendant) to cash one of the money orders instead of just cashing the money order himself at the bank in which he worked.

In addition, the evidence showed that when the defendant purchased the vehicle for Boykin from Bristol Ford the

2. The defendant made a motion for judgment of acquittal at the completion of the Goverment's case and again at the close of all the evidence, both of which were denied by the trial court. In that the defendant offered evidence after the denial of the motion for acquittal, the question of the sufficiency of the evidence to support a conviction must be determined by an examination of the entire record. United States v. Greene, 442 F. 2d 1285 (10th Cir. 1971); United States v. Kenny, 236 F.2d 128 (3rd Cir. 1956); Wright, Fed. Practice & Procedure § 463.

car was registered to the defendant. The fact that the defendant on July 11, 1974, caused the vehicle to be registered in his name and not Boykin's is evidence of an intent to conceal the identity of Boykin as the person who was to receive the benefit of the proceeds from the stolen money orders and, therefore, is circumstantial evidence that the defendant was aware that the money orders delivered over to him by Boykin were acquired by unlawful means.

Finally, the defendant was familiar with the procedures customarily followed in the drafting and cashing of checks. The defendant testified that he had purchased money orders and cashed employment checks at numerous banks. The defendant's knowledge concerning normal banking procedures becomes significant when viewed in light of Boykin's statement to the defendant that he (Boykin) had received the money orders in settlement of an accident claim. Other than the monetary amount imprinted thereon, the money orders were completely blank. The defendant's testimony that he believed Boykin's statement that the money orders were received in settlement of a claim is simply unbelievable, particularly in view of the fact that the money orders in question had neither the name of a payor or payee noted thereon, and also in view of defendant's willingness to cite a "crap game" as the true source of the money orders.

 As the Government correctly points out, "evidence of 'collaboration' or 'association' between the principal and [the aider] may be used to infer the aider's awareness of the principal's intent." United States v. Cades, *supra,* 495 F.2d at 1169; United States v. Moses, 220 F. 2d 166, 169 (3rd Cir. 1955). Boykin came to the defendant's home on two separate occasions to give the defendant the money orders. On one occasion, Boykin took possession of the automobile purchased for him by the defendant with one of the two money orders. Williams' association with Boykin, who defendant knew to be a bank employee at or about the time the money orders were removed from the Western Savings Bank, strengthens the inference that Williams knew Boykin stole the money orders and intended to defraud the bank.

The Court concludes that the evidence presented reasonably supports an inference that Williams intended to aid and abet Boykin's violation of 18 U.S.C. § 656.