**UNITED STATES of America**

v.

**Albert Thomas GOODWYN.**

**Crim. No. 75–137.**

United States District Court, E. D. Pennsylvania.

March 26, 1976.

Robert N. DeLuca, Asst. U. S. Atty., Robert E. J. Curran, U. S. Atty., Philadelphia, Pa., for plaintiff.

Edward H. Weis, Asst. Defender, Benjamin Lerner, Defender, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

This matter comes before the Court on the defendant's motion for a new trial after a jury verdict of guilty on three counts of a three count indictment. The indictment charged the defendant in each count with the unlawful transportation in interstate commerce of an altered security and aiding and abetting in violation of 18 U.S.C. § 2314 and 18 U.S.C. § 2.

The defendant, in his motion for a new trial, asserts that the Court erred in charging the jury on aiding and abetting in violation of 18 U.S.C. § 2(a) in that the government produced insufficient evidence of aiding and abetting. For the reasons stated herein, we deny the defendant's motion for a new trial.

The government produced the following evidence at trial. Susan Green, a secretary employed by Research for Better Schools in Philadelphia, testified that she opened a special checking account with The Fidelity Bank in 1972 and ordered a set of checks from the bank.[1] Ms. Green testified that she asked that these checks not be mailed to her because she lived in an area in which checks were often stolen from the mail. (N.T. 2–16). After approximately two weeks, not having received her checks, Ms. Green reordered checks and continued to use the starter checks she had received upon opening her account. (N.T. 2–16, 2–17). When the starter checks she had written on her Fidelity account began to be returned for insufficient funds, Ms. Green complained to the bank and was told that her account would be closed. (N.T. 2–16, 2–19). At trial, Ms. Green was shown a check numbered 153, drawn on the account of Susan Green with The Fidelity Bank to the order of Unity Buying Service, Inc. (Unity), in the amount of $112.09. Ms. Green stated that she had not written the check and that the signature was not hers. (N.T. 2–18, 2–19). Ms. Green was

1. Susan Green's account with The Fidelity Bank was number 689–265–6.

then shown two checks, numbered 3022 and 3313, which were drawn on the Worcester County National Bank on the account of Melcort Inc. (Melcort) to the order of S. Green, Youth Summer Camp Program, 323 North State Street, Philadelphia, Pa. 19104. The first check was in the amount of $319.98 and the second was in the amount of $309.99 (N.T. 2–21). Both checks contained a first endorsement in red ink in the name of Susan Green. Ms. Green stated that neither endorsement was hers and that she had never transacted any business with Melcort. (N.T. 2–20, 2–25). Joseph Ludwig, the Senior Operations Officer in the customer claims department of The Fidelity Bank, testified that account number 689 765 6, in the name of Susan Green, was opened on September 29, 1972, and was closed on January 16, 1973, and that the account was overdrawn when closed. (N.T. 2–32, 2–33).

Armando Calabrese, the office manager of Unity testified that on March 30, 1973, Unity received an order from an Albert Goodwyn at 323 North State Street, Philadelphia, Pa. 19104. The order form requested four items and was accompanied by a check made out to Unity, drawn on the Fidelity Bank, bearing the signature of Susan Green. (N.T. 2–62). The check was made out for $112.09, an amount in excess of the cost of the four items ordered. Also, one of the items ordered by Albert Goodwyn was not in stock and he was entitled to a refund check from Unity for $31.11. (N.T. 2–66). Pursuant to company practice, Unity made out a refund check for $31.11 and mailed it to Mr. Goodwyn at 323 N. State Street, Philadelphia, Pa. 19104. (N.T. 2–68). The check was altered to $181.11, endorsed by Albert Go-

odwyn, deposited on June 1, 1973 in the defendant's account with the First Pennsylvania Bank, and returned to Unity in New York. (N.T. 2–71–2–82). Mr. Calabrese testified that at the time the Unity check was prepared, the records of Unity showed that it owed Albert Goodwyn only $31.11. (N.T. 2–71).[2]

Raymond Moore, the internal auditor for Thom McAn Shoe Company located at Worcester, Massachusetts, also testified for the government. Mr. Moore stated that Melcort was a mail order division of Thom McAn Shoe Company. Melcort was formed in 1971 and was liquidated in December of 1973. (N.T. 2–40). On two occasions, April 18, 1973, and April 27, 1973, Melcort prepared checks drawn on the Worcester County National Bank in Massachusetts to the order of S. Green, Youth Summer Camp Program, 323 N. State Street, Philadelphia, Pa. 19104. The first check, prepared on April 18, 1973, and numbered 3022, contained a voucher number of 42,388 and was drawn in the amount of $19.98.[3] (N.T. 2–46). The check was subsequently altered to read $319.98 and was returned to Melcort in Massachusetts. (N.T. 2–46).[4] The second check, prepared on April 27, 1973, and numbered 3313, contained a voucher number of 42,666 and was drawn in the amount of $9.99. (N.T. 2–46).[5] This check was subsequently altered to read $309.99 and was returned to Melcort in Massachusetts. (N.T. 2–46).[6] The $300.00 alteration in each check was discovered by Melcort in the normal process of reconciling their bank account at the Worcester County National Bank. (N.T. 2–47). Mr. Moore testified that these checks had been prepared and mailed to 323 North State Street, Philadelphia, Pa. 19104, because

---

**2.** The refund check, dated April 5, 1973, was drawn on the Franklin National Bank of Bethpage, New York and was numbered 498548. The microfilm records of Unity revealed that the refund check for $31.11 was prepared and mailed to the defendant under invoice number 895760. The Unity check which was deposited in the account of the defendant for $181.11 also bore invoice number 895760.

**3.** Exhibit G–2–A is a copy of the original April 18, 1973 check prepared at the same time as the original.

**4.** Exhibits G–2 and G–12.

**5.** Exhibit G–3–A is copy of the original April 27, 1973 check prepared at the same time as the original.

**6.** Exhibits G–3 and G–12.

shoes which had previously been ordered and paid for had been returned to Melcort. (N.T. 2–45). At the time Melcort was liquidated in 1973, the address of 323 North State Street, Philadelphia, Pa. 19104, appeared twice on the company's records and the name Goodwyn appeared both times in connection with that address. (N.T. 2–51, 2–52).

Emma Bungard, Manager of the Loss Prevention and Check Fraud unit of the First Pennsylvania Bank, testified that Albert Goodwyn of 323 North State Street has an account with the First Pennsylvania Bank. (N.T. 2–82).[7] Ms. Bungard testified that on June 1, 1973, Albert Goodwyn deposited the check issued by Unity for $31.11 which was altered to $181.11 in his account and received a credit of $181.11. (N.T. 2–83).[8] On June 21, 1973, Albert Goodwyn deposited $370.89 in his account. Included in this deposit was the check issued by Melcort for $9.39 which was altered to $309.99, which amount was credited to the defendant's account. (N.T. 2–83).[9] On June 27, 1973, the bank processed a deposit for Albert Goodwyn of the check issued by Melcort for $19.98 which was altered to $319.98 and credited the defendant's account for $319.98. (N.T. 2–85).[10] Finally, the government and the defendant entered into a stipulation that the Unity check was received by the Franklin National Bank of Bethpage, New York from the First Pennsylvania Bank in the normal course of banking activities and that the account of Unity was charged $181.11. (N.T. 2–102). The parties also stipulated that the two Melcort Checks were received by the Worcester County National Bank in Worcester, Massachusetts from the First Pennsylvania Bank through the normal course of banking channels and that the account of Melcort was charged $319.98 and $309.99. (N.T. 2–102). The parties further stipulated that two latent fingerprints of the defendant were developed on the $9.09 Melcort check (altered to $309.09); that the endorsement "Albert Goodwyn" on the back of all three checks was in fact the signature of the defendant; and that there were some differences between the handwriting of the Susan Green who testified at the trial and the "Susan Green" endorsements on the back of the two Melcort checks. (N.T. 2–103).

The defendant, Albert Goodwyn, testified at trial in his own behalf. The defendant testified that during the early Spring of 1973 he was living and working at 323 North State Street, which address he used as an office for the Summer Camp Program for the Youth '73. (N.T. 2–114). The defendant testified that he met a Susan Green, who was not the same person as the witness who testified for the government, on the street while soliciting volunteers for his program.[11] According to the defendant, this Susan Green told him that she was willing to work as a volunteer and became the finance officer for the Summer Camp Program for the Youth. As finance officer, this Susan Green was in charge of purchasing supplies as well as soliciting funds. (N.T. 2–115). The defendant testified that his Susan Green worked with him for approximately four months and that she was not paid a salary, but was given an expense account. (N.T. 2–116).

The defendant testified that the Melcort check for $319.98 was given to him

---

7. The account is numbered 413 170 2.

8. Exhibit G–9.

9. Exhibit G–10.

10. Exhibit G–11.

11. The defendant stated on direct examination that he had met his Susan Green in the Spring of 1973 and on cross-examination stated that he may have cashed or taken other checks from her in March of 1973 just before she started to work for him. (N.T. 2–126, 2–127).

On cross-examination the government produced two checks, dated December 8, 1972, and December 14, 1972, drawn on the account of Susan Green and to the order of Albert Goodwyn, in the amounts of $46.75 and $47.83. (N.T. 2–134, 2–138). Mr. Goodwyn, when confronted with these checks, stated that these checks were in connection with an "art purchase" and a stereo radio bought by his Susan Green from him and that he had forgotten about these transactions. (N.T. 2–139).

by his Susan Green on a Saturday in April of 1973. (N.T. 2–116, 2–117). He stated that the check was in the amount of $319.98 at the time it was given to him and that he cashed the check for her and deposited it in his checking account. (N.T. 2–117). The defendant also testified that he cashed the other Melcort check in the amount of $309.99 for his Susan Green on April 27, 1973. (N.T. 2–119). He allegedly gave her "the majority of the money [the face amount of the check] . . . for expenses and whatnot." (N.T. 2–119).[12] With respect to the Unity check, the defendant testified that he received it as a refund. He admitted that the Unity check was originally in the amount of $31.11 or $81.11 and that it was possible that he altered the check to $181.11 because Unity owed him that amount for a typewriter which he had ordered from them but which was out of stock. (N.T. 2–121, 2–122).[13]

The defendant concedes that there was no error in charging the jury as to the substantive offense of unlawfully transporting an altered security in interstate commerce in violation of 18 U.S.C. § 2314.[14] He further concedes that the Court did not err in charging the jury that the defendant could be found guilty of *causing* the altered securities to be unlawfully transported in interstate commerce in violation of 18 U.S.C. § 2(b). The defendant contends however that the Court erred in giving the aiding and abetting charge pursuant to 18 U.S.C. § 2(a). The indictment in all

three counts charged the defendant with violating both 18 U.S.C. § 2314 and 18 U.S.C. § 2.

18 U.S.C. § 2314 makes it a crime for one with unlawful or fraudulent intent to transport in interstate commerce an altered security, knowing the same to have been altered. 18 U.S.C. § 2 reads as follows:

(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal.

The defendant argues that by depositing these three checks in his account he may have caused them to be transported in interstate commerce in violation of 18 U.S.C. § 2(b),[15] but that he did not aid, abet, counsel, command, induce or procure the commission of the crime charged in the indictment in violation of 18 U.S.C. § 2(a).

There is no question in this case that there was more than sufficient evidence to establish beyond a reasonable doubt that all the essential elements of the substantive crime were committed. The defendant argues however that he could not be guilty of aiding and abetting pursuant to 18 U.S.C. § 2(a) because there was no evidence that any-

---

12. The defendant testified later that he did not give his Susan Green the face amount of the two Melcort checks. He stated that he gave her close to $300.00 of the first check and that he gave her part of the second check. Mr. Goodwyn stated that the remaining proceeds from these two checks were used to rent buses, purchase supplies and camping equipment, purchase stationery, and for advertising for the Youth Summer Camp Program. (N.T. 2–120).

13. The defendant introduced a Unity order form purportedly sent on March 22, 1973, in which a typewriter is ordered at a cost of $181.11. (Exhibit D–1).

14. 18 U.S.C.A. § 2314 reads as follows in pertinent part:

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited;

\* \* \* \* \* \*

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

15. In *United States v. DeCavalcante,* 440 F.2d 1264, 1268 (1971), our Third Circuit stated that the purpose of section 2(b) of 18 U.S.C. was to make culpable one who causes the commission of an indispensable element of an offense by an innocent agent or instrumentality.

one else participated in the crime with whom he could aid and abet other than the banks, which only participated through the performance of their normal banking activities. It is well established that one cannot be convicted of aiding and abetting unless the proof establishes that the substantive crime charged was committed by someone and that the defendant charged had knowledge of the substantive offense and acted with the intent to facilitate the commission of such offense. *United States v. Cades,* 495 F.2d 1166 (3d Cir. 1974); *United States v. Provenzano,* 334 F.2d 678, 691 (3d Cir.), *cert. denied,* 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964); *United States v. Williams,* 391 F.Supp. 741 (E.D. Pa.1975). However, the law is equally clear that a principal need not be convicted or even identified in order to convict a defendant of aiding and abetting pursuant to 18 U.S.C. § 2(a). *United States v. Bryan,* 483 F.2d 88, 93 (3d Cir. 1973); *United States v. Azadian,* 436 F.2d 81 (9th Cir. 1971); *United States v. Provenzano,* 334 F.2d 678, 691 (3d Cir.), *cert. denied,* 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964); *United States v. Clearfield,* 358 F.Supp. 564 (E.D.Pa.1973).

■ The defendant's own testimony at trial served as the basis for the Court's determination to charge pursuant to 18 U.S.C. § 2(a). The defendant testified that a "Susan Green" other than the Susan Green who testified at trial participated with him in these transactions. According to the defendant, his "Susan Green" initially purchased the Unity merchandise on behalf of Summer Camp Program for the Youth and "possibly" paid for the merchandise with a personal check numbered 153 in the amount of $112.00, drawn on the account of the Susan Green who testified at trial. The defendant also claimed that his "Susan Green" gave him the Melcort checks involved herein so that he could cash them, reimburse her for the expenses which she had incurred, and deposit the balance for use in his program. Although the defendant's story about the other "Susan Green" was at best difficult to believe, it is not the Court's function to determine credibility. Such is the exclusive province of the jury. The jury could have concluded in light of the defendant's testimony that there was another "Susan Green" who participated with him in transporting in interstate commerce the altered checks. The jury, if they believed the defendant's story that there was another "Susan Green", that she altered the two Melcort checks which he deposited to his account, that it was his "Susan Green" who sent her check to Unity knowing that it was in excess of the amount due Unity, and that a refund check would be forthcoming from Unity, which refund check the defendant admitted altering, could have found that the defendant aided and abetted his Susan Green in violation of 18 U.S.C. § 2(a). We find therefore that there was no error in charging the jury that the defendant could be convicted upon a finding that he either (a) aided, abetted, counselled, induced or procured the commission of the crime charged, or (b) willfully caused its commission. The jury found the defendant guilty on all three counts of the indictment.

Accordingly, the following Order is entered.