UNITED STATES of America,
Plaintiff-Appellee,

v.

Morton H. FRANKLIN,
Defendant-Appellant.

No. 79–5027.

United States Court of Appeals,
Sixth Circuit.

Argued June 18, 1979.

Decided Sept. 6, 1979.

Elmer Giuliana, Leonard W. Yelsky, Cleveland, Ohio, for defendant-appellant.

James R. Williams, U. S. Atty., Cleveland, Ohio, Patty Ellen Merkamp, Appellate Sec-

tion, Criminal Div., U. S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before KEITH, Circuit Judge, PHILLIPS, Senior Circuit Judge, and BROWN, District Judge.*

HARRY PHILLIPS, Senior Circuit Judge.

Morton H. Franklin appeals from his conviction at a jury trial of aiding and abetting a bank officer in the misapplication of bank funds, in violation of 18 U.S.C. §§ 656[1] and 2[2], and conspiracy to commit the substantive offense, in violation of 18 U.S.C. § 371.[3] The principal issue raised by the briefs and oral arguments of the parties concerns whether there was sufficient evidence to support a verdict of guilty on either charge against Franklin. After a thorough review of the record, we conclude the evidence was insufficient to support the jury verdict and accordingly, we reverse.

I

Milton Kadis, an unindicted coconspirator, and Dominic Bartone, a codefendant and coconspirator, operated American Concrete Builders, Inc. (ACB), a trucking company located in Youngstown, Ohio. Kadis was the president of the corporation and was principally responsible for maintaining the company's fleet of trucks. Bartone, the vice-president of operations and general manager, also was responsible for the financial affairs of the company.

During the fall of 1973, appellant, who was an acquaintance of Bartone's, met Kadis and Bartone for breakfast one Sunday morning. At that time, ACB was in need of working capital for the operations of the company. Appellant mentioned that a friend of his, Richard W. Palmer, was the president of Northern Ohio Bank, a federally insured bank, in Cleveland, Ohio, and that Palmer probably could arrange a loan for the needed capital. Bartone replied that they might as well attempt to get a loan from Palmer. Appellant instructed the two men to compile personal financial statements and a financial statement on ACB for submission by appellant to Palmer. Appellant also informed Kadis and Bartone that if ACB received a loan, they (Kadis and Bartone) would have to give Palmer a "present."

The following Sunday the three men met again. Appellant reported that the financial statements appeared to be in order and that a loan was almost assured. Appellant then arranged a date with Kadis and Bar-

---

* The Honorable Bailey Brown, Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation.

1. Section 656 provides, in relevant part, as follows:

§ 656. Theft, embezzlement, or misapplication by bank officer or employee

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

2. Section 2 provides, as follows:

§ 2. Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

3. § 371. Conspiracy to commit offense or to defraud United States

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

tone to introduce them to Palmer. Subsequently, appellant informed Kadis and Bartone that they should bring their wives to the meeting with Palmer.

In late October or early November 1973, Kadis, Bartone and their wives met with Palmer in Palmer's office at Northern Ohio Bank. Appellant introduced Kadis and Bartone to Palmer and then left. There was little discussion during the meeting concerning the loan, nor were any papers relating to the loan signed at that time by Kadis, Bartone, or their wives. However, Palmer did tell the men that their statements looked good and that they would be hearing from him. This was the only meeting between Kadis, Bartone, their wives, and Palmer concerning the loan.

Some time later, Bartone gave Kadis for signature a Northern Ohio Bank Single Payment Collateral Note and a Security Agreement[4] in the name of ACB. Both documents were dated November 19, 1973. The Security Agreement was signed by Kadis and Bartone both personally and as corporate officers of ACB. On November 26, 1973, the bank credited $50,000 to the account of ACB.

On the Sunday following the meeting at the bank, Kadis, Bartone, and appellant met again. There was a discussion about the "present" Kadis and Bartone agreed to give Palmer in return for arranging the loan. Appellant told the men to buy four first-class, round-trip airline tickets to Las Vegas. Bartone agreed to the "present" and on December 3, 1973, Kadis purchased the tickets, using his personal airtravel credit card.[5] Kadis then personally delivered the tickets to Palmer at the bank, Palmer accepted the tickets without any discussion.

Palmer prepared the loan application for ACB and in so doing indicated that the loan would be guaranteed by Kadis and his wife and Bartone and his wife. Additionally, in the Special Loan Report[6] for ACB that was submitted by Palmer to the bank loan committee, he indicated that the loan would be secured by Agreements to be Bound[7] of Kadis and his wife and Bartone and his wife.

However, neither Mrs. Kadis' nor Mrs. Bartone's signature appeared on any of the documents prepared to secure the loan for ACB. Over one year after the $50,000 was credited to the bank account of ACB, in December 1974 or January 1975, Kadis, Bartone, and their wives signed an Agreement to be Bound on the $50,000 loan to ACB. The agreement was back-dated to November 19, 1973.

Sometime in 1973 or 1974, Palmer also requested Gwen Stanos, a loan officer at Northern Ohio Bank, to keep in her desk drawer an Agreement to be Bound that was signed by Bartone. This Agreement ordinarily would have been retained in the bank vault, where loan papers are kept.[8] Bartone had exceeded the legal lending limits of the bank at that time, and therefore the Agreement to be Bound was kept in Stanos' desk to conceal the loan from anyone authorized to examine the financial condition of the bank.

After a jury trial in the district court, appellant was convicted of aiding and abetting Palmer in the misapplication of bank

---

4. A Security Agreement on a loan bound the person or persons signing the agreement only to the extent of that specific loan.

5. The bill for the tickets, which cost $349.27 each, was paid by ACB as a company expense. One of the four tickets was later turned in unused and the amount of that ticket was credited to Kadis' account.

6. The Special Loan Report was a document that summarized the assets and credit history of an individual or company; it was submitted to the loan committee of the bank for approval or ratification of the loan.

7. An Agreement to be Bound on a loan to a company was a guarantee by the person or persons signing the agreement on any and all loans to the company. An Agreement to be Bound signed by a husband and wife committed all of their shared assets to the agreement.

8. There is some testimony of Stanos' to suggest that the Agreement to be Bound that she kept in her desk, at Palmer's request, related to the $50,000 loan for ACB and that Palmer made his request of her at or around the time the ACB loan was secured.

funds, in violation of 18 U.S.C. §§ 656 and 2, and of conspiracy to commit the substantive offense, in violation of 18 U.S.C. § 371. Appellant was sentenced to three years imprisonment on the aiding and abetting charge and two years imprisonment and a $5,000 fine on the conspiracy charge, the terms of the imprisonment to run concurrently and concurrently with sentences previously imposed against appellant in the United States District Court for the Southern District of Florida.

## II

Section 656 of 18 U.S.C. makes it a felony for a bank officer, director, agent or employee to abstract, purloin or willfully misapply moneys, funds or credits of a federally connected bank. This court previously has recognized, in *United States v. Cooper*, 577 F.2d 1079, 1085 (6th Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978), that "what is precisely encompassed in the term 'misapplication' may be subject to continuing judicial refinement." *Compare United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977), *cert. denied*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978) *and Hargreaves v. United States*, 75 F.2d 68 (9th Cir.), *cert. denied*, 295 U.S. 759, 55 S.Ct. 920, 79 L.Ed. 1701 (1935) *with United States v. Gens*, 493 F.2d 216 (1st Cir. 1974) *and United States v. Docherty*, 468 F.2d 989 (2d Cir. 1972). However, this court in *Cooper* recognized that at the very least the term misapplication "meant [a] deceitful and dishonest mishandling of bank funds." 577 F.2d at 1085.

▮ Additionally, an intent to injure or defraud a covered institution is an essential element of the offense of misapplication of bank funds, *Cooper*, 577 F.2d at 1082; *United States v. Tokoph*, 514 F.2d 597, 603 (10th Cir. 1975); *Logsdon v. United States*, 253 F.2d 12, 15 (6th Cir. 1958), which can be inferred from the facts and circumstances adduced at trial. *Tokoph*, 514 F.2d at 603. "Intent to injure or defraud a bank exists whenever [the bank officer] acts knowingly and the result of his conduct would be to injure or defraud the bank, regardless of his motive," *United States v. Schoenhut*, 576 F.2d 1010, 1024 (3d Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 421 (1978); *Tokoph*, 514 F.2d at 603; *Galbreath v. United States*, 257 F. 648 (6th Cir. 1918), and includes a reckless disregard of the interests of the bank. *Cooper*, 577 F.2d at 1082–83; *United States v. Wilson*, 500 F.2d 715, 720 (5th Cir. 1974), *cert. denied*, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975).

▮ In order to convict a person of aiding and abetting a § 656 violation, the Government must first demonstrate that the bank officer was guilty of violating § 656. *United States v. Cades*, 495 F.2d 1166, 1167 (3d Cir. 1974); *United States v. Giordano*, 489 F.2d 327, 330 (2d Cir. 1973). *See United States v. Tornabene*, 222 F.2d 875, 878 (3d Cir. 1955). Viewing the evidence, along with all inferences reasonably drawn therefrom, in the light most favorable to the government, *see Glasser v. United States*, 315 U.S. 60, 82, 62 S.Ct. 457, 86 L.Ed. 680 (1941); *United States v. Cunningham*, 599 F.2d 120 (6th Cir. 1979), we conclude the evidence was sufficient to establish Palmer's guilt of misapplication of bank funds, in violation of § 656, beyond a reasonable doubt.

The evidence shows that Palmer approved a loan to ACB on the basis of a Security Agreement and a Single Payment Collateral Note signed by Kadis and Bartone, even though the loan application and Special Loan Report indicated that both Kadis and his wife and Bartone and his wife would execute guarantees on the loan. An Agreement to be Bound signed by all the parties was not executed until more than one year after the proceeds of the loan were credited to the account of ACB. Furthermore, there was evidence to suggest that the loan was approved by Palmer despite the fact that Bartone had exceeded his legal lending limit at the bank. Palmer attempted to conceal this fact by instructing another bank employee to retain in her desk an Agreement to be Bound signed by Bartone, rather than in the bank vault, which was the normal bank procedure. Fi-

nally, Palmer required that four airline tickets be purchased for him for arranging the loan to ACB. We cannot say, on these facts, that there was not sufficient evidence for a jury to find Palmer guilty of misapplication of bank funds.

■ Even if the bank officer is guilty as a principal, it must also be shown that the person charged with aiding and abetting had knowledge of the substantive offense of the bank officer and acted with the intent to facilitate the commission of such offense. *Tokoph*, 514 F.2d at 603; *Cades*, 495 F.2d at 1168; *Giordano*, 489 F.2d at 330; *United States v. Williams*, 391 F.Supp. 741, 743 (E.D.Pa.1975). As we have previously discussed, there was sufficient evidence to prove the substantive violation of 18 U.S.C. § 656 by Palmer. Furthermore, there can be no dispute that appellant's acting as the intermediary between Palmer and Kadis and Bartone in fact furthered the violation of § 656. The determinative question here is whether appellant was aware of Palmer's intent to injure or defraud the bank.

■ That the loan to ACB was improperly secured according to the loan application and the Special Loan Report, and that Bartone was overextended at the bank, which Palmer knew and attempted to conceal, we view as the facts evidencing Palmer's intent to injure or defraud the bank. However, there is nothing in the record to suggest that appellant had any actual knowledge of the various procedures implemented by Palmer to secure the loan. We are left to decide, therefore, whether such awareness of the machinations of Palmer in arranging the loan can be inferred to appellant from other facts relating to appellant's involvement in the loan transaction.

Because it is often difficult to prove directly the awareness of aider and abettor of the principal's intent to injure or defraud a bank, courts have allowed the inference of such awareness to be drawn from other circumstances, and have allowed this inference to serve as a basis for finding the necessary intent to facilitate the commission of the substantive offense. *Cades*, 495 F.2d at 1169. *See United States v. Giorda-*

*no, supra; Logsdon v. United States, supra.* Thus, "[e]vidence of 'collaboration' or 'association' between the principal and his aides may be used to infer the aider's awareness of the principal's intent." *Cades*, 495 F.2d at 1169.

Recognizing that appellant suggested to Kadis and Bartone that his friend Palmer could arrange a loan and that appellant subsequently instructed the two men to purchase for Palmer four airline tickets, there can be little doubt that Palmer and appellant were to some degree associated with one another. We conclude, however, that these facts standing alone are insufficient to allow the inference to be drawn that appellant was aware of Palmer's intent to defraud the bank.

Although appellant served as an intermediary between Palmer and Kadis and Bartone, there is no evidence to suggest that he was familiar with or even remotely aware of any of the facts surrounding the ACB loan application or its processing. The evidence demonstrates that the extent of appellant's involvement in the procurement of the loan was limited to conversations with Kadis and Bartone concerning the possible availability of a loan for ACB, for which a "present" would have to be given in exchange, securing financial statements from the men that were given by appellant to Palmer, introducing the men to Palmer, and informing the men of the "present" that was expected from them. Noting that the above facts concern only details incidental to the loan transaction, and finding no evidence to indicate the extent to which appellant was personally familiar with Kadis, Bartone, or their company, it cannot be inferred that appellant was aware of the personal financial conditions of either of the men, or their personal loan status with Northern Ohio Bank.

Additionally, there is nothing in the record to indicate that appellant participated with Palmer in any capacity in the actual loan transaction other than to serve as the initial referral for him and later to serve as an intermediary between Palmer and the borrowers on matters merely incidental to

the loan transaction. It does not follow from these facts that appellant was aware of the improper conditions upon which the loan was granted to ACB or the procedures employed by Palmer in arranging the loan. Although appellant instructed Kadis and Bartone to purchase the airline tickets as a "present" for Palmer, for which appellant could have been prosecuted as an aider and abettor under 18 U.S.C. § 215,[9] we view appellant's involvement in those aspects of the loan transaction where Palmer's intent to injure or defraud the bank was manifested to be so tangential as not to be sufficient for the jury to infer that appellant, although associated in some way with Palmer, also was aware of Palmer's criminal intent and conduct.

### III

■ While the elements that must be proved to convict appellant of conspiracy are different from those required to convict him for aiding and abetting, the deficiencies of the record that preclude conviction for aiding and abetting also prevent his conviction as a conspirator. "The 'gist' of a conspiracy . . . 'is agreement among the conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy.'" *United States v. De Cavalcante,* 440 F.2d 1264, 1272 (3d Cir. 1971), quoting *United States v. Falcone,* 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128 (1940). The law of conspiracy also requires agreement as to the "object" of the conspiracy, which means that the "essential nature of the plan" must be shown. *Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 92 L.Ed. 154 (1947); *United States v. Rosenblatt,* 554

F.2d 36, 38 (2d Cir. 1977). Therefore, it was necessary for the Government to establish the existence of an agreement between Palmer and appellant to misapply funds of the Northern Ohio Bank with an intent to injure or defraud the bank. *Cades,* 495 F.2d at 1170. We conclude, from our review of the record, that the evidence and all reasonable inferences to be drawn therefrom are insufficient to establish an agreement between Palmer and appellant, the "object" or "essential nature" of which was to violate 18 U.S.C. § 656.

The judgment of the district court is reversed.

BAILEY BROWN, Chief District Judge, concurring.

I concur in the majority opinion. I would also point out that, as I construe the charge to the jury, the appellant, Franklin, could be found guilty of willfully aiding and abetting a misapplication of bank funds under 18 U.S.C. § 656 if he aided and abetted in the making of a kickback to the bank president. A misapplication under § 656 is a felony while the receipt of a kickback under 18 U.S.C. § 215 is only a misdemeanor. Thus it appears to me that, to this extent, the charge was erroneous and that therefore a new trial would be required in any event.

---

**9.** 18 U.S.C. § 215 provides, as follows:

**§ 215. Receipt of commissions or gifts for procuring loans**

Whoever, being an officer, director, employee, agent, or attorney of any bank, the deposits of which are insured by the Federal Deposit Insurance Corporation, of a Federal Intermediate Credit Bank, or of a National Agricultural Credit Corporation, except as provided by law, stipulates for or receives or consents or agrees to receive any fee, commission, gift, or thing of value, from any

person, firm, or corporation, for procuring or endeavoring to procure for such person, firm, or corporation, or for any other person, firm, or corporation, from any such bank or corporation, any loan or extension or renewal of loan or substitution of security, or the purchase or discount or acceptance of any paper, note, draft, check, or bill of exchange by any such bank or corporation, shall be fined not more than $5,000 or imprisoned not more than one year or both.