856 F.2d 196
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James H. LINKE (87-3940), Rodney G. Pore (87-3986),
Defendants-Appellants.
 Nos. 87-3940, 87-3986.
 United States Court of Appeals, Sixth Circuit.
 Sept. 1, 1988.
 
 Before KEITH, KENNEDY and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendants Rodney Pore and James Linke appeal the jury verdict convicting them of possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. For the reasons set forth below, we AFFIRM their convictions.
 
 I.
 
 2
 On November 5, 1986, Columbus attorney Donald Rooney, Jr., was arrested for possessing over an ounce of cocaine. Upon his arrest, Rooney agreed to cooperate with police efforts to curb drug trafficking in the Columbus area. He agreed to help arrange a sham drug transaction using one of his neighbors, Richard Sterner, as the middle-man for the deal.
 
 
 3
 Sterner was a 59-year-old sales executive who dealt primarily in oil and gas investments. Rooney had previously told Sterner that he used cocaine and had asked Sterner if he knew of any source for cocaine. Sterner told him no. However, Sterner testified that during a subsequent conversation with defendant James Linke, an associate whom he had known for nine or ten years in connection with oil and gas investments, Linke indicated that he knew of a source for cocaine. Linke had not actually disclosed the source.
 
 
 4
 Thus, at Rooney's request, Sterner telephoned Linke on November 10, 1986, to arrange a cocaine transaction for later that day in Columbus. Rooney's telephone conversations with Sterner were recorded at Upper Arlington Police Detective Fry's office.
 
 
 5
 Sterner later testified that the deal involved delivering cocaine to Columbus. During the course of the negotiations about the deal, however, the parties reached a disagreement and impass. As the buyer, Rooney (for the Arlington Police Department) had told Sterner to ask for a sample of the cocaine and the opportunity to test it. Defendant Linke apparently was unable to accommodate that request, and the transaction could not be completed. Linke telephoned this information to co-defendant Rodney Pore, the supplier of the cocaine.
 
 
 6
 In the meantime, however, one Virgil Popa was designated to act as a lookout and a courier for the transaction. Popa testified that he knew defendants Linke and Pore and that he believed Pore worked for Linke. At defendant Pore's request, on the morning of the sham transaction, Popa went to defendant Linke's house to relay a message. Popa then had lunch with Pore, and together they bought a portable CB radio for use in communicating during the transaction. Popa testified that during the attempted deal, there was an ongoing dialogue between Linke and Pore by telephone and beeper. Popa also testified that after the parties failed to consummate the deal, Pore asked Popa to take the briefcase of cocaine from Pore's automobile and return it to Pore's house in Mansfield, Ohio.
 
 
 7
 On the day of the transaction, based upon Rooney's preliminary information, Detective Fry positioned a sureveillance team inside a van to monitor the vicinity of Sterner's office. That team observed a late model Cadillac circle Sterner's office parking lot. The driver of the Cadillac was later identified as defendant Pore. Another person, later identified as Virgil Popa, exited a parked "yellowish mid-70's Chrysler station wagon" and left with defendant Pore in the Cadillac. The license numbers of both cars were recorded, and the surveillance team was repositioned to a location north on Interstate 71 since it was suspected that the drugs had come for the Mansfield, Ohio, area.
 
 
 8
 Detective Fry and the surveillance team later stopped Popa on Interstate 71, driving the station wagon observed earlier. The team recovered approximately 12 ounces of cocaine in a briefcase, and Popa was arrested. The resulting cooperation of Popa and Sterner led to the indictment of defendants Linke and Pore.
 
 II.
 A. Appeal By Defendant Linke
 
 9
 Defendant Linke appeals his conviction on the ground that there was insufficient evidence to sustain a conviction for aiding and abetting the possession of cocaine with intent to distribute. Defendant Linke contends that his conviction cannot be upheld upon the theory that he was a principal in the crime of possessing with intent to distribute because: (1) the evidence was insufficient to establish that Linke ever possessed the cocaine; and (2) the trial court ruled that the evidence was insufficient to charge the jury on the theory that Linke was a principal, and therefore the jury could only find Linke guilty of aiding and abetting.
 
 
 10
 The aiding and abetting statute has an extremely broad reach. 18 U.S.C. Sec. 2 provides, in pertinent part, that:
 
 
 11
 a. Whoever commits an offense against the United States or aides, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 
 
 12
 b. Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 
 
 13
 According to the statute, there must be a guilty principal before another party can be found to be an aider and abetter. United States v. Franklin, 608 F.2d 241, 244 (6th Cir.1979) (aiding and abetting a violation of 18 U.S.C. Sec. 656); United States v. Staten, 581 F.2d 878, 887 (D.C.Cir.1978); United States v. Cades, 495 F.2d 1166, 1167 (3d Cir.1974). Once that second party has been found to have aided or abetted the offense, however, he or she may be found guilty under the statute as a principal. United States v. Harris, 523 F.2d 172, 174 (6th Cir.1975).
 
 
 14
 To prove that Linke aided and abetted Pore, the government must establish four elements: (1) that Linke had the specific intent to facilitate Pore's possession of cocaine with the intent to distribute it; (2) that Linke had guilty knowledge; (3) that the offense was committed by Pore; and (4) that Linke assisted or participated in the commission of the offense. See United States v. Garrett, 720 F.2d 705, 712-13 (D.C.Cir.1983); United States v. Hamilton, 689 F.2d 1262, 1272 (6th Cir.1982), cert. denied, 459 U.S. 1117 (1983); United States v. Staton, 581 F.2d at 886-87. It is not necessary to show that Linke actually touched or possessed the cocaine. United States v. Winston, 687 F.2d 832, 834 n. 2, 835 (6th Cir.1982).
 
 
 15
 In determining whether defendant Linke aided and abetted defendant Pore in the offense, the facts should be construed in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80 (1942). In this case, Pore was convicted as a principal, and the evidence was sufficient to show that defendant Linke aided and abetted defendant Pore. In our opinion, the jury could properly have found that Linke intended Pore, the guilty principal, to make the sale through Sterner to the buyer, Rooney. Linke participated in the sale by arranging the details through Sterner and directing Pore by telephone. Thus, it does not matter that Linke may not have had physical possession of the drugs; all that is required is that Linke aided and abetted the principal, Pore, for Linke himself to be convicted as a principal.
 
 
 16
 Defendant Linke also claims that there is some logical incongruence in convicting someone for aiding and abetting possession with intent to distribute cocaine, as opposed simply to aiding and abetting actual distribution. This argument, while it may have some intuitive appeal, is not the rule in our circuit. See United States v. Winston, 687 F.2d 832 (6th Cir.1982) (defendant found guilty of aiding and abetting possession with intent to distribute; conviction upheld).
 
 
 17
 We therefore affirm the jury verdict on this first issue.
 
 B. Appeal By Defendant Pore
 1. Speedy Trial Claim
 
 18
 Defendant Pore asserts that the district court erred in not granting his motion to dismiss based upon a violation of the speedy trial act. Specifically, Pore claims that the 70-day speedy trial limitation was exceeded by eight days.
 
 
 19
 However, as the July 9, 1987, Order of the district court reveals, the defendant was arraigned on March 6, and a continuance was granted on May 12. Accounting for the excludable time permitted under 18 U.S.C. Sec. 3161(h)(1)(F), (J) and (7), (8)(A),[1] it appears that only 19 speedy trial days expired between Pore's first appearance and trial.
 
 
 20
 We therefore affirm the district court on this second claim.
 
 2. Comments By Linke's Counsel
 
 21
 Defendant Pore objects to the comments made by the attorney for defendant Linke in his closing argument referring to Pore's life style and personal possessions.[2]
 
 
 22
 No objection was made to the comments at trial. Our review is therefore limited to whether those comments constituted plain error. United States v. Young, 470 U.S. 1 (1985). Plain errors are limited to those harmful ones that are so rank that they should have been apparent to the trial judge without objection or that strike the fundamental fairness, honesty or public reputation of the trial. United States v. Causey, 834 F.2d 1277, 1281 (6th Cir.1987), cert. denied, 108 S.Ct. 2019 (1988); United States v. Mendez-Ortiz, 810 F.2d 76, 78 (6th Cir.1986), cert. denied, 107 S.Ct. 1384 (1987).
 
 
 23
 After careful review of counsel's closing arguments, we are unable to conclude that his uncontroversial remarks constituted plain error, or error at all. We therefore affirm on Pore's second claim.
 
 D. Suppression Motion
 
 24
 As his last issue on appeal, defendant Pore contends that the district court erred in overruling Pore's motion to suppress claimed evidence of an alleged electronic interception of a telephone call between the two co-conspirators, the result of which defendant Pore claims was a probable cause determination made by the sureveillance team arresting Mr. Popa. The government flatly denied any such use of electronic surveillance.
 
 
 25
 A hearing was conducted on the suppression motion on April 27, 1987. At the hearing, the government produced Detective Frye, who was subjected to cross examination by both counsel. The court also reviewed several tape recorded conversations in connection with the sham transaction. In its memorandum, the court concluded that there was "not a scintilla of evidence before the court which would so indicate [any electronic surveillance]" by the government. Pore's Appendix at 5.
 
 
 26
 The conclusion of the district court that no electronic surveillance occurred was a finding of fact that may only be disturbed if it was clearly erroneous. Fed.R.Civ.P. 52(a). A finding of fact is clearly erroneous when we are left, after a review of the record, "with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Moreover, "[i]n making a decision as to whether a mistake has occurred, this court defers to the district court's determinations with respect to the credibility of witneses." United States v. City of Birmingham, Michigan, 727 F.2d 560, 564 (6th Cir.), cert. denied, 469 U.S. 821 (1984). We find no basis for concluding that the district court's finding that no electronic surveillance took place, after that court's evaluation of the evidence and testimony before it, was clearly erroneous.
 
 III.
 
 27
 For the reasons set forth above, the convictions of defendants Pore and Linke are affirmed.
 
 
 28
 (J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.
 
 
 29
 (7) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.
 
 
 30
 (8)(A) Any period of delay resulting from a continuance granted by any judge....
 
 
 
 [1]
 Those sections provide:
 (h) The following periods of delay shall be excluded in computing the time within which the trial of any such offense may commence:
 (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to--
 * * *
 (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
 * * *
 * * *
 * * *
 
 
 [2]
 The comments to which defendant Pore objects include the following:
 What it does do it forces me and Mr. Linke into a situation where we sit down in the court room with Rod Pore, good, bad or indifferent. Now that's a mixed blessing ...
 Now, on one hand, the Government wants to paint Rod Pore as the highroller, high class drug dealer, driving his '85 Corvette, driving his '82 Cadillac, all these things he's supposed to have
 * * *
 ... this Rod Pore who they're trying to paint as this high class drug dealer ...
 Joint Appendix at 9.